## UNITED STATES *v.* WEST VIRGINIA ET AL.

No. 17, original. Argued May 2, 1935.—Decided May 20, 1935.

464

*Mr. Homer A. Holt,* Attorney General of West Virginia, for the State of West Virginia, defendant, in support of its motion to dismiss.

*Messrs. Edward W. Knight* and *Robert S. Spilman,* with whom *Mr. William L. Lee* was on the brief, for Electro Metallurgical Co. et al., defendants, in support of their motion to dismiss.

*Mr. Huston Thompson,* with whom *Solicitor General Reed* and *Assistant Attorney General Blair* were on the brief, for the United States, in opposition to the motions to dismiss.

466

MR. JUSTICE STONE delivered the opinion of the Court.

This is an original suit in equity, brought by the United States, in which relief by injunction is sought against the defendants, the State of West Virginia, Union Carbide and Carbon Corporation, a New York corporation, and its wholly owned subsidiaries, Electro Metallurgical Company and New-Kanawha Power Company, West Virginia corporations. The questions now presented are raised by separate motions, one by the State of West Virginia, the other by the corporate defendants, to dismiss the bill of complaint on the grounds that it does not state any justiciable controversy between the United States and the State of West Virginia, and that it appears upon the face of the bill of complaint that this Court has no original jurisdiction of the suit against the defendants or any of them.

The bill of complaint, filed January 14, 1935, contains allegations which, so far as now relevant, may be detailed as follows. The New River flows northwesterly across the State of West Virginia and near the center of the State joins the Gauley River to form the Kanawha River, which flows thence to the state boundary and into the Ohio River. The New and Kanawha Rivers are one continuous interstate stream, which throughout its course constitutes navigable waters of the United States. There are many locations for dam sites on the rivers; four dams have been constructed on the New River at points in Virginia and West Virginia, and a fifth at Hawks Nest, West Virginia, upon which the present litigation centers,

is now approaching completion. The United States has constructed ten dams on the Kanawha River for the purpose of improving navigation and is now engaged in construction work on two additional dams on the Kanawha River immediately below the Hawks Nest project, and has in contemplation the construction of a large reservoir at Bluestone, West Virginia, on the New River above the Hawks Nest project, for purposes of flood control, production of power and in aid of navigation. It is alleged that the New and Kanawha Rivers throughout West Virginia constitute a continuous stream which was in its natural condition and still is susceptible of navigation, and is a highway capable of being improved and used for purposes of interstate and foreign commerce; that any obstructions to its navigability will be removed or overcome by improvements initiated by the United States and now in operation or in the course of construction; that the Hawks Nest project will seriously obstruct navigation in the New and Kanawha Rivers, by producing fluctuations in the flow of New River; and that, upon the filing by New-Kanawha Power Company of a declaration of intention to construct the dam, pursuant to § 23 of the Federal Water Power Act, c. 285, 41 Stat. 1063, 1075, 16 U. S. C. 791, 817, the Federal Power Commission determined that the proposed Hawks Nest dam would affect the interests of interstate commerce and that under the Act the dam could not lawfully be built without a license from the Commission.

It is further alleged that the defendant, New-Kanawha Power Company, has obtained from the Public Service Commission of West Virginia a license or permit to construct the dam at Hawks Nest for power purposes. This permit was later transferred to the defendant, Electro Metallurgical Company; and the corporate defendants, acting under the state license, are now engaged in the construction of the dam. It is alleged that its construc-

tion is in violation of the Act of Congress of March 3, 1899, c. 425, § 9, 30 Stat. 1121, 1151; 33 U. S. C. 401, and the Federal Water Power Act, in that the plans for the project have not received the consent of Congress or the approval of the Chief of Engineers of the United States Army and the Secretary of War, and the defendants have received no license for the project from the Federal Power Commission.

The allegations with respect to the State of West Virginia are that the State challenges and denies the claim of the United States that the New River is a navigable stream; that the State asserts a right superior to that of the United States to license the use of the New and Kanawha Rivers for the production and sale of hydro-electric power, and denies the right of the Federal Power Commission to require a license for the construction and operation of the Hawks Nest project by the corporate defendants, and that the State asserts that, insofar as the Federal Water Power Act purports to confer upon the Federal Power Commission authority to license the project or to control the use of the river by the corporate defendants, the Act is an invasion of the sovereign rights of the State and a violation of the Constitution of the United States. The bill further elaborates, in great detail and particularity, but does not enlarge, these basic allegations.

It prays an injunction restraining the corporate defendants from constructing or operating the Hawks Nest project without a license from the Federal Power Commission. It also asks an adjudication that the New River is navigable waters of the United States and that the United States has the right to construct and operate, and to license others to construct and operate, dams and connected hydro-electric plants on the New and Kanawha Rivers. We are asked to declare that any right of the State of West Virginia to license the construction and operation of dams upon the rivers, or to sell or to license

others to sell power generated at such dams, is subject to the rights of the United States, and to enjoin the State from asserting any right, title or interest in any dam, or hydro-electric plant in connection with it, or in the production and sale of hydro-electric power on the New and Kanawha Rivers, superior or adverse to that of the United States, and from in any manner disturbing or interfering with the possession, use and enjoyment of such right by the United States.

It can no longer be doubted that the original jurisdiction given to this Court by § 2, Art. III of the Constitution, in cases " in which a State shall be a party," includes cases brought by the United States against a State. *United States* v. *Texas,* 143 U. S. 621; *United States* v. *Michigan,* 190 U. S. 379, 396; *Oklahoma* v. *Texas,* 252 U. S. 372; 258 U. S. 574, 581; *United States* v. *Minnesota,* 270 U. S. 181, 195; *United States* v. *Utah,* 283 U. S. 64; compare *Florida* v. *Georgia,* 17 How. 478, 494; *United States* v. *North Carolina,* 136 U. S. 211. But the original jurisdiction thus conferred is only of those cases within the judicial power of the United States which, under the first clause of § 2, Art. III of the Constitution, extends " to all cases, in law and equity, arising under this Constitution, the laws of the United States, and . . . to controversies to which the United States shall be a party . . ." *Massachusetts* v. *Mellon,* 262 U. S. 447, 480–485; see *Wisconsin* v. *Pelican Insurance Co.,* 127 U. S. 265, 289. Our original jurisdiction does not include suits of the United States against persons or corporations alone, see *Ex parte Barry,* 2 How. 65; *Louisiana* v. *Texas,* 176 U. S. 1, 16; *Baltimore & Ohio R. Co.* v. *Interstate Commerce Comm'n,* 215 U. S. 216, 224; *Oklahoma* v. *Texas,* 258 U. S. 574, 581, nor is it enough to sustain the jurisdiction in such a case that a State has been made a party defendant. The bill of complaint must also present a

" case " or " controversy " to which the State is a party, and which is within the judicial power granted by the Judiciary Article of the Constitution.

Hence we pass directly to the question whether the bill of complaint presents a case or controversy between the United States and the State of West Virginia within the judicial power. The answer is unaffected by the fact, set forth in the bill of complaint, that the State, on its application to intervene in a suit, since discontinued, brought by the United States in the District Court for West Virginia to restrain the corporate defendants from constructing the dam, asserted its interest as a State in the development of power under state license at the Hawks Nest dam, particularly in the license fees and taxes to be derived from the project. The details of the attempted intervention at most serve only to support the allegations of the bill, that the State has asserted the right, through a license of the Hawks Nest project, to control the use of the rivers for power purposes.

At the outset, it should be noted that the bill in the present suit neither asks the protection nor alleges the invasion of any property right. It asserts no title in the United States to the bed of the stream, which might afford a basis for a suit to remove a cloud on title, as in *United States v. Utah, supra,* and *United States v. Oregon, ante,* p. 1. It alleges that the United States has built dams on the Kanawha River below the Hawks Nest project, and has acquired lands in pursuance of its plans for flood control, improvement of navigation, and the generation and sale of hydro-electric power on both rivers. But there is no allegation of any interference by the State, actual or threatened, with any of the land or property thus acquired.

The only right or interest asserted in behalf of the United States is its authority under the Constitution to

control navigable waters, and particularly the right to exercise that authority through the Federal Power Commission. Since that authority is predicated upon the single fact, fully alleged in the bill and admitted by the motions to dismiss, that the rivers are navigable waters of the United States, the power of the United States to control navigation, and to prevent interference with it by the construction of a dam except in conformity to the statutes of the United States, must be taken to be conceded. See *New Jersey* v. *Sargent,* 269 U. S. 328, 337. But the bill alleges no act or threat of interference by the State with the navigable capacity of the rivers, or with the exercise of the authority claimed by the United States or in behalf of the Federal Power Commission. It alleges only that the State has assented to the construction of the dam by its formal permit, under which the corporate defendants are acting. There is no allegation that the State is participating or aiding in any way in the construction of the dam or in any interference with navigation; or that it is exercising any control over the corporate defendants in the construction of the dam; or that it has directed the construction of the dam in an unlawful manner, or without a license from the Federal Power Commission; or has issued any permit which is incompatible with the Federal Water Power Act; or, indeed, that the State proposes to grant other licenses, or to take any other action in the future.

Section 28 of the Water Power Act of West Virginia, c. 17 of the Acts of 1915, which gives to the state Public Service Commission its authority, provides that " nothing contained in this act shall be construed to interfere with the exercise of the jurisdiction by the government of the United States over navigable streams." The bill seeks an injunction, against the corporate defendants, restraining only the construction of the dam without a

license from the Federal Power Commission. But § 9 (b) of the Federal Water Power Act requires that every applicant for a license shall present " satisfactory evidence that the applicant has complied with the requirements of the laws of the State or States within which the proposed project is to be located with respect to bed and banks and to the appropriation, diversion, and use of water for power purposes and with respect to the right to engage in the business of developing, transmitting, and distributing power. . . ." The mere grant of the state license, which the Federal Water Power Act makes prerequisite to the application for the federal license, cannot be said to involve any infringement of the federal authority. It does not appear that the State has done more.

We may assume, for present purposes, that the United States as sovereign has a sufficient interest in the maintenance of its control over navigable waters, and in the enforcement of the Federal Water Power Act, to enable it to maintain a suit in equity to restrain threatened unlawful invasions of its authority, see *Kansas* v. *Colorado,* 185 U. S. 125; *Georgia* v. *Tennessee Copper Co.,* 206 U. S. 230, 237; *Marshall Dental Manufacturing Co.* v. *Iowa,* 226 U. S. 460, 462; *Missouri* v. *Holland,* 252 U. S. 416, 431; see *Hudson Water Co.* v. *McCarter,* 209 U. S. 349, 355, and that a cause of action within the jurisdiction of a federal district court is stated against the corporate defendants who are alleged to be engaged in building an obstruction in navigable waters of the United States.

But there is presented here, as respects the State, no case of an actual or threatened interference with the authority of the United States. At most, the bill states a difference of opinion between the officials of the two governments, whether the rivers are navigable and, consequently, whether there is power and authority in the

federal government to control their navigation, and particularly to prevent or control the construction of the Hawks Nest dam, and hence whether a license of the Federal Power Commission is prerequisite to its construction. There is no support for the contention that the judicial power extends to the adjudication of such differences of opinion. Only when they become the subject of controversy in the constitutional sense are they susceptible of judicial determination. See *Nashville, C. & St. L. Ry. Co.* v. *Wallace,* 288 U. S. 249, 259. Until the right asserted is threatened with invasion by acts of the State, which serve both to define the controversy and to establish its existence in the judicial sense, there is no question presented which is justiciable by a federal court. See *Fairchild* v. *Hughes,* 258 U. S. 126, 129, 130; *Texas* v. *Interstate Commerce Comm'n,* 258 U. S. 158, 162; *Massachusetts* v. *Mellon, supra,* 483–485; *New Jersey* v. *Sargent, supra,* 339, 340.

General allegations that the State challenges the claim of the United States that the rivers are navigable, and asserts a right superior to that of the United States to license their use for power production, raise an issue too vague and ill-defined to admit of judicial determination. They afford no basis for an injunction perpetually restraining the State from asserting any interest superior or adverse to that of the United States in any dam on the rivers, or in hydro-electric plants in connection with them, or in the production and sale of hydro-electric power. The bill fails to disclose any existing controversy within the range of judicial power. See *New Jersey* v. *Sargent, supra,* 339, 340.

The Government places its chief reliance upon the decision in *United States* v. *Utah, supra,* in which this Court took original jurisdiction of a suit, brought by the United States against the State, to quiet title to the bed of the

Colorado River. But the issue presented by adverse claims of title to identified land is a case or controversy traditionally within the jurisdiction of courts of equity. Such an issue does not want in definition. The public assertion of the adverse claim by a defendant out of possession is itself an invasion of the property interest asserted by the plaintiff, against which equity alone can afford protection. See *United States* v. *Oregon, supra.* A different issue, in point of definition of threatened injury and imminence of the controversy, is presented by rival claims of sovereign power made by the national and a state government. The sovereign rights of the United States to control navigation are not invaded or even threatened by mere assertions. It is, in this respect, in a position different from that of a property owner, who because of the adverse claims to ownership can neither sell his property nor be assured of continued possession. The control of navigation by the United States may be threatened by the imminent construction of the dam, but not by permission to construct it.

No effort is made by the Government to sustain the bill under the Declaratory Judgment Act of June 14, 1934, c. 512, 48 Stat. 955. It is enough that that act is applicable only " in cases of actual controversy." It does not purport to alter the character of the controversies which are the subject of the judicial power under the Constitution. See *Nashville, C. & St. L. Ry. Co.* v. *Wallace, supra.*

Since there is no justiciable controversy between the United States and the State of West Virginia, the cause is not within the original jurisdiction of this Court and must be                                             *Dismissed.*

MR. JUSTICE BRANDEIS is of opinion that the United States should be granted leave to amend its bill.