**LAKE ERIE PROVISION CO. et al. v. MOORE, Collector of Internal Revenue.**

Nos. 5247–5249.

District Court, N. D. Ohio, E. D.
July 10, 1935.

John H. Watson, Jr., John T. Scott, and Robert W. Wheeler, all of Cleveland, Ohio, for plaintiff Lake Erie Provision Co.

H. A. Spring and R. A. Cannon (of Cannon, Spieth, Taggart, Spring & Annat), both of Cleveland, Ohio, for plaintiff Ohio Provision Co.

Fred J. Perkins and W. B. Stewart (of McKeehan, Merrick, Arter & Stewart), both of Cleveland, Ohio, for plaintiff Fairchild Milling Co.

E. B. Freed, U. S. Atty., and E. L. Foote, Asst. U. S. Atty., both of Cleveland, Ohio, for defendant.

JONES, District Judge.

The plaintiffs each have filed substantially identical bills of complaint and petitions seeking declaratory judgments against the collector of internal revenue for the Eighteenth District of Ohio, on the basis of an actual controversy in which is brought in question asserted constitutional rights alleged to have been violated by act of Congress known as the Agricultural Adjustment Act, United States Code, title 7, sections 601 to 622, inclusive, approved May 12, 1933, and amended thereafter on several dates not material. Pending final hearing on the merits, temporary restraining orders and preliminary injunctions are prayed restraining the collector from exacting the processing taxes required to be paid by the plaintiffs upon the rate basis fixed by the Secretary of Agriculture under authority delegated to him by the act of Congress.

The first two plaintiffs are processors of hogs; the third plaintiff is engaged in the first domestic processing of wheat. Each of the parties is liable for and required to pay the processing tax under applicable provisions of the Agricultural Adjustment Act and proclamation of the Secretary of Agriculture. The amount of the tax in each case is in excess of the jurisdictional requirements.

For present purposes, it will be sufficient to state that the act, section 9 (7 USCA § 609), provides that, "the processing tax shall be levied, assessed, and collected upon the first domestic processing of the commodity, whether of domestic production or imported, and shall be paid by the processor"; and that "the processing tax shall be at such rate as equals the difference between the current average farm price for the commodity and the fair exchange value of the commodity; except that if the Secretary has reason to believe that the tax at such rate on the processing of the commodity generally * * * will cause such reduction, * * * he shall cause an appropriate investigation; and find "the current average farm price and the fair exchange value shall be ascertained by the Secretary of Agriculture from available statistics of the Department of Agriculture"; and the rate of tax "shall be determined by the Secretary of Agriculture as of the date the tax first takes effect, and the rate so determined shall, at such intervals as the Secretary finds necessary to effectuate the declared policy, be adjusted by him to conform to such requirements."

Thus, it will be seen from the brief excerpts of the act that these proceedings deal with the question of the power of Congress to delegate to the Secretary of Agriculture the power to declare the rate of and fix the tax to be collected from the processors of the commodities included in the act. It is the collection of the tax so fixed which is sought to be enjoined.

It is the claim of the plaintiffs that their constitutional rights are violated by the Agricultural Adjustment Act, upon the ground of unlawful delegation of power to the Secretary of Agriculture, and for other reasons. And, as an additional ground for injunction, charge that the Secretary has arbitrarily, oppressively, and erroneously exercised the powers granted to him by the act by proclaiming or fixing a wrong rate. Injunctive relief further is sought to prevent irreparable loss asserted to be imminent and inescapable, if denied; further averring that they have no adequate remedy at law.

By motion to dismiss filed in each of the cases, the United States interposes a barrier to the injunctive relief in section 3224 of the Revised Statutes of the United States (title 26, § 154, U. S. C. [26 USCA § 154]), which act expressly withholds power from the court to enjoin or restrain the assessment or collection of any tax. Unless a situation is presented in these cases which circumvents that statute, the court is without power to respond to the prayer for injunctive relief.

The above section was enacted in 1867 (14 Stat. 475) and has, until the present time, been generally and consistently applied in cases where the collection of taxes has been sought to be enjoined. This statute has been construed most recently by the Supreme Court in Miller v. Standard Nut Margarine Company, 284 U. S. 498, page 509, 52 S. Ct. 260, 76 L. Ed. 422, wherein the court held that the statute did not deprive the equity court of power to enjoin or restrain the collection of taxes under exceptional circumstances, such as an attempt to collect taxes on a nontaxable article or transaction. In that case, the article sought to be taxed was not covered by the law. The collection of the tax was without statutory authority. In these cases, the tax has legislative authority and mandate.

■ Under Federal Constitutional grant (Const. art. 3, § 1), Congress has power to limit the jurisdiction of the inferior federal courts. Thus judicial consideration of the constitutional limitation of congressional power must be preceded by examination of the source and extent of judicial power to give effect to, as well as to declare, a right asserted to be impaired or denied by legislative action. And limitations on the exercise of judicial power should be construed in accordance with the express terms of the congressional act.

■ In Miller v. Nut Margarine Company, supra, two of the justices thought the statute admitted of no exceptions. Section 3224, Revised Statutes (26 USCA § 154), is directed to prohibiting the exercise of equity powers. Injunction is essentially an equitable remedy, and there is nothing in the section which makes any exception in respect of the kind and character of equitable considerations which may justify a departure from the rule. Under the express terms of the statute, it was not intended that it should be left open to inferior courts to determine the occasion for exercising injunctive power to restrain collection of taxes. It is strenuously urged by the plaintiffs that several circumstances of an exceptional character are present which justify the application of the rule in Miller v. Nut Margarine Company, supra. But due consideration of the grounds here urged as exceptional does not result in a finding that the situation of the plaintiffs presents other or different hardships than quite frequently result, and which are more or less inherent, in cases of the exercise of the sovereign power to lay and collect taxes. That irreparable injury may be threatened and come, if the stay is denied, furnishes no occasion for the exercise of a nonexistent judicial power. Nor does the fact of an unsatisfactory or burdensome legal remedy to recover the taxes wrongfully or illegally exacted justify the overriding of the express prohibition of the statute.

■ It is also urged by the plaintiffs that the collection of the processing tax should be restrained because the Secretary has fixed a rate in excess of that which he may lawfully determine under the provisions of the act; but to enjoin the collector upon the ground of an erroneous exercise of the power delegated to the Secretary, nevertheless, would be contrary to the inhibition of the statute. The legislative limitation of the judicial power extends to the prohibition against restraining all or any part of the tax, although it may be illegal for various reasons.

Although it is not present as a matter of evidence, it is probable that the processing tax is molded into the sale price of the hogs and the wheat to the dealer or consumer. If that is true, no tax in reality is paid by the plaintiff and no irreparable injury calling for equitable relief exists. However, it well may be that the tax, when paid, becomes a part of the expense of operation as would any other tax which is not expressly charged to the consumer as a separate item. But the plaintiffs assert that the imposition of the tax materially adds to the sale price of the hogs, curtailing the market and thus inevitably will result in destroying the plaintiff's business. Such potential result is inherent in any tax measure.

■ Finally is asserted, as evidence of irreparable loss, the pendency of a measure in Congress denying means for the recovery of taxes already paid. It is sufficient to say, in disposing of such claim, that the proposal is not yet enacted into law. When and if such proposal becomes law, there may be occasion to consider whether constitutional rights are affected or violated which are within the power of a court of equity to protect and preserve, or restore.

For the reasons stated, temporary restraining orders and preliminary injunctions prayed for will be denied, and exceptions to each of the parties may be duly noted.

■ Whether, in the absence of power to grant relief, the court may determine the constitutionality of the Agricultural Adjustment Act under the Declaratory Judgment Statute (title 28 USCA § 400) is a question left for further consideration. A judgment of unconstitutionality conceivably might be moot where the court is without power to enforce the judgment. The declaration of a right, without the power to make it effective, would appear at first impression to be a vain proceeding. What the plaintiffs seek is escape from the tax. The actual controversy is directed to staying the hand of the sovereign's tax collector. With the arms of the chancellor tied, there is presented a doubtful contest. Relief under the Declaratory Judgment Statute only may be had where the court has jurisdiction (includes power) to grant it. Subdivision 2 of the Act, 28 USCA § 400

(2). But see Nashville, C. & St. L. R. Co. v. Wallace, 288 U. S. 249, 259, 263, 53 S. Ct. 345, 77 L. Ed. 730, 87 A. L. R. 1191; United States v. State of West Virginia, 55 S. Ct. 789, 79 L. Ed. 1546, May 20, 1935.

Final consideration of the government's motions to dismiss will be postponed to the hearing on the merits.