QUINONES et al. v. LANDRON et al.
No. 3336.

Circuit Court of Appeals, First Circuit.
Nov. 5, 1938.

William C. Rigby, of Washington, D. C. (B. Fernandez Garcia, of San Juan, P. R., and Nathan R. Margold, of Washington, D. C., on the brief), for appellants.

Appellees submitting on the record by leave of Court.

Before BINGHAM and WILSON, Circuit Judges, and BREWSTER, District Judge.

BREWSTER, District Judge.

The plaintiffs, appellees, are the two associate commissioners of the Public Service Commission of Puerto Rico, which, according to Section 38 of the Organic Act (Act of March 2, 1917, c. 145, 39 Stat. 951, 964), as amended by Act of Congress of March 4, 1927 (44 Stat. 1418, 1420, 48 U.S. C.A. § 750), consists of "a public service commissioner, who shall be the president of the said commission, and two associated commissioners". The defendants, appellants, are the president of the Commission and a law clerk, appointed by the president without the consent of the plaintiffs.

The plaintiffs invoke the Uniform Declaratory Judgment law of Puerto Rico (Laws of Puerto Rico, 1931, pages 378–382), by bringing suit in the District Court for the Judicial District of San Juan, praying that the court render a declaratory judgment decreeing that the power to appoint the law clerk resided in the Commission as a collective body, or a legal quorum of the same.

The District Court so decreed, and on appeal to the Supreme Court the decree was affirmed.

The defendants bring the case to this court for review. Although the assignments of error principally, if not wholly, relate to the conclusion reached in the lower courts respecting the powers of the president, from the briefs and argument it would appear that the only question before this court is whether or not there is presented on the record any "justiciable case" or "controversy" within the scope of the judicial powers.

■ In our opinion, the bill of complaint presented a case which entitled the plaintiffs to a decree defining the powers of appointment under the applicable statutes. The material portions of sections 1 and 2 of the Declaratory Act are as follows:

"Section 1 (Scope). In their respective jurisdictions district courts shall have authority to declare rights, statutes and other judicial relations although other remedies are or may be sought. * * * In form or as regards its effect, a declaration may be affirmative or negative and shall be as efficacious and as binding as final judgments or decisions.

"Section 2 (Power to construe, etc.). Every person * * * whose rights, status or other judicial relations are affected by any statute, municipal ordinance, * * * may obtain a determination of any difference in regard to the construction or validity of said statutes, ordinances, * * * and also a declaration of the rights, status or other judicial relations derived therefrom."

■ The plaintiffs were clearly persons whose rights, status or other judicial relations were affected by the statute, the construction or validity of which was in dispute. A controversy had arisen between adverse parties, materially affecting their duties and powers as members of an administrative body. The asserted rights of the defendants, if upheld, derogated from the rights, powers and duties of the plaintiffs. These challenged rights had been exercised, and whether they were properly exercised depended upon the construction and application of statutory law. Here was a definite dispute between parties, which called for judicial determination. The defendants have failed to distinguish the case at bar from Nashville, C. & St. L. Ry. Co. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191. In that case the court had before it the Declaratory Judgment Act of Tennessee, a statute similar in terms to the Puerto Rico statute. The plaintiffs had brought suit under the Act to test the validity of a state tax. It was there, in effect, said that the provisions of the Act could be invoked when the plaintiff asserts rights which are challenged by the defendant, and presents for decision an actual controversy to which he is a party, capable of final adjudication by the judgment or decree to be rendered.

■ There can be no doubt that the question of the powers of the president could be raised and presented for judicial determination in other ways. It is, therefore, a justiciable question. The jurisdiction of the court does not depend upon the form of the procedure adopted for the presentation of the question. Nashville, C. & St. L. Ry. Co. v. Wallace, supra.

The right asserted is not only threatened with invasion but has been actually invaded by acts which serve both to define the controversy and to establish its existence in the judicial sense. In this respect the case

at bar is distinguishable from United States v. West Virginia, 295 U.S. 463, 55 S.Ct. 789, 79 L.Ed. 1546, ·cited by the defendants.

It is argued that, upon the allegations of the bill of complaint, the plaintiffs do not show any grounds for seeking a declaratory judgment, since they sue only as individuals and not in their official capacity. It is impossible to accept this view. The plaintiffs are described as "associated commissioners." They allege that their rights, authority and duties, including the power of appointment of officials and employees for the Commission, are vested in the president and associated commissioners acting jointly, and that the acts of the president impair and infringe these rights. The suggestion that the bill is fatally defective, because it fails to allege any formal action by the Commission authorizing the suit, is without merit. Osborn v. United States Bank, 9 Wheat. 738, 6 L.Ed. 204.

There can be no doubt that one of the benefits contemplated by the Uniform Declaratory Act was the opportunity afforded to settle disputes arising over the powers, duties and privileges of administrative officers, especially if the disagreement involved the construction of a statute. See Borchard, Declaratory Judgments, page 592.

The judgment of the Supreme Court of Puerto Rico is affirmed.