## MONTANA POWER CO. v. FEDERAL POWER COMMISSION.

### No. 9322.

Circuit Court of Appeals, Ninth Circuit.

May 20, 1940.

Rehearing Denied June 14, 1940.

W. H. Hoover and J. E. Corette, Jr., both of Butte, Mont., and A. J. G. Priest and Sidman I. Barber, both of New York City (Reid & Priest, of New York City, and Corette & Corette, of Butte, Mont., of counsel), for petitioner.

David W. Robinson, Jr., Gen. Counsel, Willard W. Gatchell, Wallace H. Walker, Louis W. McKernan, William B. Spohn, and William J. Costello, Counsel, Federal Power Commission, all of Washington, D. C., for respondent.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

We are asked to review an order of the Federal Power Commission denying petitioner's application for a license to construct an electric power transmission line.

Missoula, Montana, is about 70 miles northwest of Anaconda, Montana. The Flathead power project is about 50 miles north and slightly west of Missoula. The Thompson Falls, Montana, power project is about 45 miles west of the Flathead project. Petitioner has power facilities at and near Anaconda for serving Anaconda and points easterly and northeasterly therefrom. It has power facilities at Missoula to serve Missoula and points south. It has power facilities at Flathead which it operates under a license from the Commission as Project No. 5. It also has power facilities at Thompson Falls. Petitioner owns no transmission line connecting these points, but has the right to use a line belonging to a railroad upon certain conditions, which line connects some of the points.

On November 20, 1936, petitioner filed an application for a license to construct a transmission line as follows: a line 56 miles long beginning at Thompson Falls and terminating at the Flathead project; and a line 145 miles long, beginning at the Flathead project, through Missoula and terminating at Anaconda, thus connecting all the points mentioned. In accordance with that plan the line was thereafter constructed. A line of about 1500 feet in length connects the line in question with the Flathead project.

The Commission found:

"(1) The line will serve principally as a primary line transmitting energy from the aforesaid Flathead plant to points of junction with the distribution system of the applicant at Thompson Falls, Missoula, and Anaconda, Montana, in addition to serving as an interconnection between those distribution systems;

"(2) When carrying the maximum energy that can be generated at the Flathead plant, after that project has been completed and is operating at its ultimate installed capacity, the transmission line cannot carry any substantial amount of power from other sources either to the aforesaid distribution system at Thompson Falls or to the distribution systems at Missoula or Anaconda;

"(3) The line is properly, therefore, a part of the Flathead project within the meaning of Section 3(11) of the Federal Power Act [16 U.S.C.A. § 796(11)] as a necessary adjunct to that complete unit of development;"

It is ordered that the application "for the license for the line as a minor part only of a complete project be and it hereby is denied" and further ordered that upon submission of certain revised and additional exhibits, the license for Project No. 5 would be amended to include the line therein. Application for rehearing was made and denied. Petitioner thereupon filed this petition to review the order.

The only two acts pertinent here are the Act of June 10, 1920, Ch. 285, 41 Stat. 1063, and the Act of August 26, 1935, Ch. 687,

49 Stat. 803, 838.[1] By § 30 of the first mentioned act, such act was designated as "The Federal Water Power Act", 16 U.S. C.A. § 791 et seq. The second mentioned act was designated as the "Public Utility Act of 1935" and consisted of two titles, the first of which was designated as the "Public Utility Holding Company Act of 1935", 15 U.S.C.A. § 79 et seq., and is not here pertinent. (§ 33). Title II of the Public Utility Act of 1935, 16 U.S.C.A. § 791a et seq., amended the Federal Water Power Act, and by § 212, 49 Stat. 847, provided that sections 1 to 29, inclusive, of what had been called The Federal Water Power Act, should constitute Part I of that act, the title to which was abandoned by repeal of § 30 of what had been called The Federal Water Power Act. Title II of the Public Utility Act of 1935, also amended, by § 213 thereof, what had been called the Federal Water Power Act, by adding thereto two parts, the last of which contained (in the last section thereof, § 320) the short title for what had been called The Federal Water Power Act as amended, including the amendments made by the Public Utility Act of 1935. Such short title was and is the "Federal Power Act" and the title "The Federal Water Power Act" is no longer the correct title of the act.

Section 3 of the Federal Power Act, provides in part:

"That the words defined in this section shall have the following meanings for the purposes of this Act [chapter], to wit: * * *

"(11) 'project' means complete unit of improvement or development, consisting of * * * the primary line or lines transmitting power therefrom to the point of junction with the distribution system or with the interconnected primary transmission system * * *

"(12) 'project works' means the physical structures of a project * * *."[2]

Section 4 of the act provides in part:

"That the Commission is hereby authorized and empowered—* * *

"(e) To issue licenses to citizens of the United States * * * or to any corporation organized under the laws of the United States or any State thereof * * * for the purpose of constructing, operating, and maintaining * * * transmission lines * * *."[3]

Section 10 of the act provides in part:

"That all licenses issued under this Part[4] shall be on the following conditions: * * *

"(a) That the project adopted, including the maps, plans, and specifications, shall be such as in the judgment of the Commission will be best adapted to a comprehensive plan for improving or developing a waterway or waterways for the use or benefit of interstate or foreign commerce, for the improvement and utilization of water-power development, and for other beneficial public uses, including recreational purposes; and if necessary in order to secure such plan the Commission shall have authority to require the modification of any project and of the plans and specifications of the project works before approval. * * *[5]

"(g) Such further [other] conditions not inconsistent with the provisions of this Act [chapter] as the commission may require * * *

"(i) In issuing licenses for a minor part only of a complete project' * * * the Commission may in its discretion waive such conditions, provisions, and requirements of this Part[6] [chapter], except the license period of fifty years, as it may deem to be to the public interest to waive under the circumstances * * *."[7]

Provision for review of the orders of the Commission is found in § 313(b) of the act.[8]

Petitioner contends that the Commission based its order on a mistake of law in holding that the Flathead project could include the line in question. It is said that the line in question is an interconnected primary transmission system; that the definition of "project" by § 3(11) of the Federal Power Act limits the Flat-

---

[1] Amendments made by the Act of March 3, 1921, Ch. 129, 41 Stat. 1353, 16 U.S.C.A. § 797, and the Act of June 23, 1930, Ch. 572, 46 Stat. 797, 16 U.S. C.A. §§ 792, 793, 797, are not pertinent here.

[2] The 1920 act contains the identical words.

[3] Section 4(d) of the 1920 act contains the identical words.

[4] This word was "act" in the 1920 act.

[5] This subdivision changed the language of § 10(a) of the 1920 act.

[6] This word was "act" in the 1920 act.

[7] Section 10 of the 1920 act was identical except as stated in notes 4 and 5.

[8] No similar provision is found in the 1920 act.

head project to the place of connection with the line in question by the line 1500 feet long; that therefore, the Commission has decided that a project may consist of more than "to the point of junction with the distribution system or with the interconnected primary transmission system". This contention is not borne out by the action of the Commission because the Commission did not misconstrue the definition given in § 3(11). The Commission found that the line in question "will serve principally as a primary line transmitting energy from the aforesaid Flathead plant to points of junction with the distribution systems of the applicant at Thompson Falls, Missoula and Anaconda, Montana". If the line in question is actually such a "primary line" then in accordance with the definition in § 3(11), the line is a part of the Flathead project.

█ It can be seen, therefore, that actually the question to be decided is whether the Commission's findings are "supported by substantial evidence" because if so, they are "conclusive" here. Federal Power Act, § 313(b). In this connection, petitioner contends that there is no evidence in the record to support the findings. The evidence disclosed that the Flathead plant is not yet completed by the installation of another generating unit; that when and if installed, the ultimate power capacity of the Flathead plant will be such that when such power is moving toward Thompson Falls, there would be no substantial excess of capacity for carrying power from any other source over the line from the Flathead project to Thompson Falls; that when the Flathead plant is completed, as stated, and all the power therefrom is moving to Anaconda, there would be no substantial excess of capacity for carrying power from any other source over the line from the Flathead project to Anaconda.

While petitioner does not dispute these statements, it contends that they are not facts but assumptions and speculation because there is now no way of knowing: whether another unit will be installed at the Flathead plant; whether, when installed, its capacity will be taken; what the power demand will be; what water supply will be available to run petitioner's generating plants; what direction the Flathead power will be transmitted, and other like reasons. We believe petitioner's contention cannot be sustained. The evidence supports the findings of the Commission. Whether the facts disclosed in these findings will occur, of course, is a question only determinable by judgment as to the future.

█ The Commission is required to exercise its judgment, as provided in § 10 (a) of the act. The license to be issued is subject to the condition that "the project adopted * * * shall be such as in the judgment of the Commission will be best adapted to a comprehensive plan * * * for the improvement and utilization of water-power development * * *." The act leaves to the discretion of the Commission what project shall "be best adapted to a comprehensive plan" for such improvement and utilization. "The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body". Rochester Tel. Corp. v. United States, 307 U.S. 125, 146, 59 S.Ct. 754, 765, 83 L.Ed. 1147, and cases there cited. A rational basis for the Commission's conclusions might be the low cost of Flathead power. From experience the Commission may know, or be perfectly sure, that power generated at the government project at Flathead will be sold at a cost so low that the entire output thereof will be constantly in demand. If so, it can be seen that the line in question will be used for the transmission of that power. At any rate, we cannot say that there is no rational basis for the conclusions of the Commission.

█ Finally, it is contended that the order of the Commission operates to deprive petitioner of its property without due process of law, because by § 14 of the act, the United States has the right to acquire the line in question at the end of the license period, by paying petitioner its net investment and reasonable damage, if any, to petitioner's property. On the other hand, if the line in question is not a part of the Flathead project, then to acquire it, the United States would be compelled to pay the fair operating value of the line.

The United States has not taken, has not threatened to take, and cannot for about fifty years, take the line in question. Under these circumstances, we think petitioner has no standing to raise the question. New Jersey v. Sargent, 269 U.S. 328, 339, 46 S.Ct. 122, 70 L.Ed. 289; United States v. West Virginia, 295 U.S. 463, 474, 55 S. Ct. 789, 79 L.Ed. 1546. Petitioner makes no contention that the Commission's conduct of the hearing deprived it of due process of law.

Affirmed.