Valerie Schramm STEPHENSON, Plaintiff-Appellant,

v.

Grant T. STEPHENSON, Jr., and Howard E. Stephenson, Defendants-Appellees.

No. 12038.

United States Court of Appeals Seventh Circuit.

Oct. 28, 1957.

Richard H. Tyrrell, Milwaukee, Wis., Walker Lowry, San Francisco, Cal., T. L. Tolan, Jr., Milwaukee, Wis., Henry D. Costigan, Katherine M. Griffin, San Francisco, Cal., for appellant.

John M. Redford, William C. Dill, Milwaukee, Wis., Zillmer & Redford, Milwaukee, Wis., of counsel, for appellees.

Wood, Warner, Tyrrell & Bruce, Milwaukee, Wis., McCutchen, Thomas, Matthew, Griffiths & Greene, San Francisco, Cal., of counsel.

Before LINDLEY, SCHNACKENBERG and PARKINSON, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

From a judgment of the district court dismissing plaintiff's complaint for declaratory judgment and to quiet title, plaintiff appeals.

Defendants' answer, denying that an actual present controversy has arisen between the parties, having been filed to the complaint, a trial was had in which certain affidavits herein referred to were admitted as evidence by stipulation of the parties.

The affidavits of Charles G. Heimerdinger and Henry D. Costigan, California attorneys connected with a law firm representing plaintiff, and William P. Wentworth, a member of an investment firm in California, and certain allegations of the complaint admitted by the answer establish, *inter alia,* the following facts:

Grant T. Stephenson and Irene Eldred Stephenson were married on December 29, 1906. Three children (all now adults) were born of the marriage: defendants Grant T. Stephenson, Jr., and Howard E. Stephenson, and Irene Clara Stephenson. Grant and Irene, the husband and wife, were divorced on June 9, 1922. The judgment of the Circuit Court of Milwaukee County, Wisconsin, in the divorce action, dissolved the marriage, gave custody of the children to the wife, provided for her support by giving her for life (or until remarriage) the income from certain trusts to be created from funds to be obtained from trusts theretofore created for the husband's benefit by his parents, provided for an adjustment of the rights of the wife upon remarriage, directed the wife to support the children during their minorities, appointed First Wisconsin Trust Company trustee of the support trusts, directed the husband to make a will in a described form and enjoined any change in that will which would interfere with the support trusts, and confirmed in the husband title to the balance of his property, free of all claims of the wife.

The divorce decree provided that First Wisconsin, as trustee of the support trusts—

"* * * shall hold the amount so received by it in trust, to invest and reinvest the same and pay over the income thereof when and as received to the said plaintiff (the wife) annually during her life, and at her death to pay over the principal thereof to the said defendant Grant T. Stephenson (the husband), or his assigns, if he be then living, and in the event that he shall have died prior to the death of the plaintiff, then to such person or persons as he shall by his last will and testament, duly admitted to probate, appoint, and in default of such appointment, to his heirs or legal representatives."

Irene, the first wife, now 72 years old, has never remarried. She is entitled to the income from the trust property during her life.

Grant, the husband, married plaintiff on October 31, 1932. There are no children of this marriage. Grant moved to California and on November 14, 1934 he executed there a will in favor of plaintiff. She says in her brief that this will is not precisely in the form attached to the divorce decree but since it does not interfere with the support trusts, it is not in violation of the decree.

Grant died in California on January 29, 1951 and his 1934 will was duly admitted to probate there. In due course the remainder interests in the support trusts were distributed to plaintiff. She is now 57 years old and has no children.

Plaintiff attempted to sell the remainders. She then sued one of the children, Irene Clara Stephenson, to quiet title and obtained a default judgment. The other children are the defendants in this action, the purpose of which is to establish plaintiff's title to the trust remainders, which (she says) will "permit the sale of those remainders to go forward".

The complaint, asserting diversity jurisdiction, was filed in the district court on November 4, 1953. It recites the facts about the creation of the support trusts, *alleges that the defendants claim*

*an interest in the trust remainders,* denies that any such interest exists, *alleges that there is a controversy between plaintiff and defendants* within the meaning of the Declaratory Judgment Act,[1] *alleges that the claim of defendants* has cast a cloud on plaintiff's title, rendering it unmarketable, and prays for a judgment quieting her title to the trust remainders and declaring that defendants have no interest therein.

In a written opinion [2] the district court expressed its conclusion, *inter alia,* that plaintiff had not presented a case or controversy within the meaning of the Declaratory Judgment Act. Its order of dismissal followed.

Plaintiff relies upon the district court's jurisdiction to quiet title under the "traditional powers of an equity court * * * and under the law of Wisconsin which recognizes equity jurisdiction to quiet title to personal property". She asserts moreover that this is a proper case for declaratory relief.

She says that she seeks to sell property which is now unmarketable *because of claims of defendants,* and hence she has brought a quiet title action, "describing the adverse claims". Parallel with that contention she says that declaratory relief is appropriate because an actual controversy *has been pleaded* and proved. She maintains that this is not a case where one party merely apprehends or fears the assertion of rights against him by another or of a mere difference of opinion, but it is a case in which plaintiff claims and *defendants deny* that (subject to the life estate) the trust property now belongs to plaintiff. Referring to the allegations in her complaint that the trust remainders are now vested in her, she points out that the answer denies that allegation and alleges that she now has no vested interest in said trust. She therefore asserts that the pleadings state the controversy and demonstrate that it is actual and genuine.

Thus we see that, faced with the requirement that a quiet title action cannot be maintained unless there is a showing that defendant asserts a claim which is adverse to plaintiff's title, 74 C.J.S. Quieting Title § 37, p. 62, and, faced with the requirement that a declaratory judgment action cannot be maintained unless it is shown that a justiciable controversy exists, plaintiff relies upon the pleadings filed in the district court to meet these requirements. This she cannot do. To sustain her position, she must show that there was a claim of adverse interest and the existence of a justiciable controversy at the time that the complaint was filed. Maryland Cas. Co. v. Pacific C. & O. Co., 312 U.S. 270, 272–273, 61 S.Ct. 510, 85 L.Ed. 826; Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 242–244, 57 S.Ct. 461, 81 L.Ed. 617; Powers v. United States, 7 Cir., 218 F.2d 828, 829, post.

We have examined the evidence before the district court with care. We find no evidence that either defendant, or anyone authorized by either of them at any time, directly or indirectly, has made any claim in any manner whatsoever adverse to the rights which plaintiff asserts in the subject matter of this suit. We base this conclusion on the following relevant parts of the affidavits constituting plaintiff's evidence.

In his affidavit, Mr. Heimerdinger, under date of August 9, 1956, averred that he had handled the estate of Grant T. Stephenson deceased, in the Superior Court of Monterey, California, that he had informed plaintiff that "in our opinion she was the owner of the remainder interest under the two trusts with First Milwaukee Trust Company under which Irene Stephenson, Grant T. Stephenson's first wife, is the life tenant." He also averred that he had advised plaintiff that it would be advisable to sell her remainder interest under the trust prior to the end of the year 1951, because of the federal estate tax; that he endeavor-

1. 28 U.S.C.A. §§ 2201, 2202.

2. 148 F.Supp. 290, 294.

ed to dispose of her remainder interest—

> "until I learned that the children of Grant T. and Irene Stephenson were claiming that they were entitled to an interest in the trusts and in that connection were claiming that Valerie Stephenson was not the sole owner of the remainder interest under the trusts."

He further stated that—

> "Initially it was my understanding that the children were not proposing to make any claim."

and that he talked to an attorney Weidner, who "apparently" represented defendants, and that Weidner informed him that defendants "had indicated that they might be interested in purchasing the remainder interest under the trusts", and that later Weidner informed Heimerdinger "that the children would pay only about $30,000 for Valerie Stephenson's interest and I told him that we were not interested in any such paltry sum for the interest."

Heimerdinger further averred that *prior to April 3, 1952* he talked on the telephone with Wentworth and "it is my recollection that I informed Mr. Wentworth or Mr. Bergues, or both, that we had endeavored to sell Valerie Stephenson's interest in the trusts to Irene Stephenson's children but that for one reason or another the children did not seem to be enthusiastic about buying the interest. It is also my recollection that I told Mr. Bergues or Mr. Wentworth, or both, that although Grant T. Stephenson had left three children surviving him so far as we knew they were not making any claims against Valerie Stephenson and apparently were not making any claim to any part of the trusts."

His affidavit also avers that on May 21, 1952 Heimerdinger told Politzer that "in our opinion Valerie Stephenson, Mr. Stephenson's widow, had a good title to the remainder interest in the trusts; that the only persons who might possibly make any claim against Mr. Stephenson's widow were his three children by his first wife, Irene Stephenson; and that so far as we knew the children were not raising any serious question or making any claim to any interest in the trusts." He told Mr. Politzer substantially the same on May 29, 1952 and also told Mr. Politzer that—

> "we were hopeful that, if the occasion arose, we would be able to obtain disclaimers from the children which would assure Major Fermor-Hesketh that he was obtaining a good title to the remainder interest from Valerie Stephenson as a result of any deal which might be worked out."

Heimerdinger swore that on November 28, 1952, he informed Politzer—

> "that contrary to our hopes and expectations we had received indications that we were going to have trouble with Irene Stephenson's children and that *it appeared quite possible that they would make some claims* to Valerie Stephenson's remainder interest in the trust. It is my recollection that in my telephone conversation with Mr. Politzer of January 28, 1953, I told him that it had become apparent to us that the only way to ascertain whether or not the children would press such claims as they thought they had would be to demand a disclaimer from them and in the event of their refusal to give us a disclaimer, to sue them for the purpose of removing any cloud on Valerie Stephenson's title."[3] (Italics added for emphasis.)

Heimerdinger's affidavit also sets forth that in the latter part of 1952 the attorney for Irene Stephenson (Grant's divorced wife) raised the question as to whether her children had any claim to the remainder interest under the trust.[4]

---

3. There is no evidence or contention that such a demand or disclaimer ever occurred.

4. At that time the ages of the three children were: Grant T. Jr., 44, Howard E., 37, Irene Clara, 35.

His affidavit alleges that endeavors to negotiate with Irene Stephenson through said attorney for a division of the trust in one way or another between Irene Stephenson and the plaintiff came to an end "when we were informed[5] in March, 1953, that the children were definitely making a claim against the remainder interest in the trusts through a Milwaukee lawyer by the name of Roger D. McIntyre."[6]

The affidavit of William P. Wentworth, dated August 3, 1956, shows that he and Jacques Bergues were partners in an investment counsel firm and that Major Fermor-Hesketh, a possible purchaser of plaintiff's remainder interest, and his attorney Jerome Politzer, talked to Bergues who then told Wentworth that Politzer wanted to know whether plaintiff clearly owned and could sell the remainder interest in the trust. Thereupon Wentworth told Bergues that Costigan and Heimerdinger had mentioned that the trust documents were long and involved and that in their opinion Mrs. Valerie Stephenson had acquired the remainder interest under the will of her husband, Grant T. Stephenson—also that they supposed that the only other persons who were heirs of the deceased husband of Mrs. Valerie Stephenson were his children and that they did not expect the children to claim any adverse interest.

Wentworth added that—

"I was later informed, in about the middle of 1952 to the best of my recollection, by Mr. Costigan that, contrary to his firm's expectation, the children of Grant T. Stephenson were claiming shares in the remainder interest and that it was probably going to be necessary to determine the ownership through a lawsuit."

The affidavit of Costigan, dated August 9, 1956, avers that on February 3, 1953 to him it

"had become clear that we should have to engage in litigation with Irene Stephenson's children to clear up the title to Valerie Stephenson's remainder interest before going further with our endeavors to liquidate Irene Stephenson's interest."

The complaint herein was filed on November 4, 1953.

Plaintiff points out as an obvious fact that her action is, in every aspect, the conventional quiet title proceeding. Recognizing that, to succeed, she must show that defendants have asserted a claim which is adverse to plaintiff in respect to the subject matter of this action, 74 C.J.S. Quieting Title § 37, p. 62, she introduced the evidence which we have above set forth. In its essential ingredients this evidence proves that plaintiff's counsel were confronted with doubts as to their client's rights. Rather than assume the responsibility of removing those doubts by their own decision, they filed this action, hoping to secure a court's determination. However, the essential proof of any claim made by defendants is lacking. There is no evidence that defendants ever asserted a claim to the remainders which plaintiff contends are vested in her. It does appear in rather vague terms, from conversations between her lawyers and also between her lawyers and investment counsel Wentworth, that the defendants were not making any claim and actually at one time were said to have offered to buy plaintiff's interest, and at other times that plaintiff's lawyers "were informed" that defendants were making a claim through a lawyer named McIntyre. Who conveyed this information to plaintiff's lawyers is not shown nor is there any evidence how or when McIntyre asserted defendants' alleged claim or that he had authority to do so. Lacking proof of an assertion of any claim by defendants, plaintiff will not be permitted to impose upon them the defense

---

5. The affidavit fails to identify the person who informed Heimerdinger.

6. The affidavit fails to show that McIntyre was ever retained by defendants or that he was authorized by them to make a claim.

of a law suit under color of a quiet title proceeding.

Furthermore, in the absence of a claim asserted by defendants, there is no actual controversy calling for a declaration of the rights of the parties under the Declaratory Judgment Act.

■ While there is an actual controversy, justifying a resort to that act, where one side makes a claim of a present, specific right and the other side makes an equally definite claim to the contrary, Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 242, 61 S.Ct. 510, 85 L.Ed. 826, a total absence of proof of a claim on one side makes impossible the existence of a controversy. For that reason, in the latter situation a declaratory judgment proceeding is not maintainable. In the case at bar, so far as the record shows, defendants' attitude has not been expressed by them in any manner. Evidently plaintiff's attorney Heimerdinger realized that fact when he said that—

> "the only way to ascertain whether or not the children would press such claims as they thought they had would be to demand a disclaimer from them and in the event of their refusal to give us a disclaimer, to sue them for the purpose of removing any cloud on Valerie Stephenson's title."

However no demand for a disclaimer was made upon defendants and of course there is no evidence of their refusal to give a disclaimer.

In United States v. West Virginia, 295 U.S. 463, 475, 55 S.Ct. 789, 79 L.Ed. 1546, it was held that the Declaratory Judgment Act does not purport to alter the character of the controversies which are the subject of the judicial power under the Constitution. We held in Powers v. United States, 7 Cir., 218 F.2d 828, 829, that the act merely provides an additional procedural remedy; it creates no substantive rights. We said:

> "* * * Consequently, a suit under the Act must present a recognizable *previously existing* justiciable controversy,—a controversy

within the jurisdiction of the District Court, irrespective of the Declaratory Judgment Act. * * *" (Emphasis supplied.)

This makes pertinent the language of the court in Willing v. Chicago Auditorium, 277 U.S. 274, 289, 48 S.Ct. 507, 509, 72 L.Ed. 880:

> "* * * But still the proceeding is not a case or controversy within the meaning of article 3 of the Constitution. The fact that the plaintiff's desires are thwarted by its own doubts, or by the fears of others, does not confer a cause of action. No defendant has wronged the plaintiff or has threatened to do so. * * *"

In Caterpillar Tractor Co. v. International Harvester Co., 9 Cir., 106 F.2d 769, 772, the court said:

> "Of course it is definitely settled that in order to come within the declaratory judgment statute there must be an actual controversy as distinguished from a prayer for an opinion advising what the law would be upon a hypothetical state of facts. * * *
>
> "Defendant's argument is, and in this we agree, that an actual controversy is not involved where a person merely apprehends or fears assertion of rights against him by another. 1 C.J.S. Actions § 18, subd. 9, pages 1030, 1031; Borchard on Declaratory Judgments (1934), pp. 36–40. * * *"

■ Simply stated, it is a general rule that where one person asserts a right and another is silent in regard thereto, there is no controversy. That being the situation shown by plaintiff in the case at bar, there is no controversy upon which to base a declaratory proceeding.

For these reasons, the judgment of the district court is affirmed.

Affirmed.

LINDLEY, Circuit Judge (dissenting).

I regret that I feel compelled to dissent. To me there is no question but that the parties claim adverse legal interests. Plaintiff asserts a specified vested interest and defendants deny and controvert that claim. This presents an actual controversy that the court should settle. If plaintiff's complaint showed that no dispute existed, it should have been dismissed on motion of defendants. But they elected to deny plaintiff's claim in their answer. The controversy which they thus raised should be heard and determined.