**Harold A. SPRIGGS, On Behalf of Himself and All Others Similarly Situated, Appellant,**

v.

**Jerry V. WILSON, Chief of Police, et al.**

**No. 24719.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 29, 1972.

Decided July 27, 1972.

Mr. Norman Lefstein, Washington, D. C., with whom Mr. Joseph Paull, Washington, D. C. (both appointed by the District Court), was on the brief, for appellant.

Mr. Charles H. Roistacher, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, John A. Terry and Mrs. Ellen Lee Park, Asst. U. S. Attys., were on the brief, for appellee. Mr. Harold H. Titus, Jr., U. S. Atty., also entered an appearance for appellee.

Before FAHY, Senior Circuit Judge, and TAMM and MacKINNON, Circuit Judges.

MacKINNON, Circuit Judge:

This appeal seeks reversal of an order of the District Court dismissing appellant's complaint for a class action declaratory judgment concerning various aspects of the police lineup procedures in the District of Columbia. Specifically, the complaint was brought on behalf of appellant Spriggs and "all suspects in criminal cases in the District of Columbia who have been required in the past or who will be ordered in the future to appear in lineups conducted by [the Metropolitan Police]." Appellant's Reply Brief, at 12. The relief sought was

declarations: (1) That no defendant can be required to appear in a lineup for a crime for which he has not been charged, or, alternatively, that such an appearance can only be ordered upon the Government's presentation of facts establishing that the *modus operandi* of the second, alleged, crime is similar to that of the crime for which the defendant was initially charged; (2) That prior to any lineup the Government must disclose to defense counsel the names and addresses of all witnesses who are scheduled to view the lineup, and provide counsel with all descriptions of suspects which witnesses have given to the police; and (3) That court reporters record all comments of counsel, police officials and witnesses as the lineup is prepared and conducted, and that transcripts of such proceedings be made available to indigent criminal defendants. For the reasons we detail below, we find that the District Court's dismissal of this complaint was proper.

## I

The facts here are not particularly relevant to our disposition of this appeal, but a very brief summary of the procedural history of the case is necessary for understanding the contentions of the parties. Appellant was arrested on robbery charges in July, 1969 and was released on bond in August. He was subsequently ordered to appear in a lineup scheduled for October 14, 1969 at which witnesses to a robbery similar to the one he was charged with perpetrating would attend.[1] He filed this action on October 10, 1969 seeking injunctive as well as declaratory relief, and he asked that the October 14 lineup be temporarily restrained pending the outcome of the suit. Temporary relief was denied by the District Court and a motion to stay the lineup was similarly denied by this court.[2] However the witnesses failed to show up on the scheduled date, with the ultimate result that appellant never appeared at any subsequent lineup.[3]

Following these events, appellant amended his complaint on December 12, 1969 by omitting his request for an injunction and adding one further request to his prayer for declaratory relief. The Government responded on December 16 with a motion to dismiss, arguing principally that since appellant had not been required to appear in any lineup the case was moot. Appellant filed an opposition to the dismissal motion on February 6, 1970 in which he contested the Government's mootness contentions and requested class action certification of the case pursuant to Fed.R.Civ.P. 23(c)(1).[4] The Government, on February 27, opposed certification of the case as a class action primarily on the ground that appellant was not then a member of the class he sought to represent.

At the June 24, 1970 hearing on the Government's dismissal motion the trial judge questioned the propriety of the declaratory judgment procedure for resolution of appellant's asserted complaints concerning the conduct of police lineups in the District. In response to this line of inquiry appellant filed a supplemental memorandum on June 29 in which he argued that his case was proper both for declaratory relief and for class action status. On July 6, 1970 the Dis-

---

1. This was a so-called "Adams order" issued pursuant to procedures suggested by our opinion in Adams v. United States, 130 U.S.App.D.C. 203, 207–208, 399 F.2d 574, 578–579 (1968).

2. Spriggs v. Wilson, 136 U.S.App.D.C. 177, 419 F.2d 759 (1969).

3. Appellant was nonetheless charged with that second robbery, and a third, in a nine-count indictment. The six counts relating to the second and third robberies were dismissed upon the Government's motion on February 10, 1970 when the District Court suppressed all identification evidence pertaining thereto following a pre-trial hearing. Appellant was acquitted by a jury on April 24, 1970 on the remaining three counts of the indictment.

4. Rule 23(c)(1) requires that "[a]s soon as practicable after the commencement of an action brought as a class action, the court *shall* determine by order whether it is to be so maintained." (Emphasis added.)

trict Court dismissed the case. However, upon reconsideration at the request of appellant he acknowledged that he had misunderstood one aspect of the case. Nevertheless, on July 31 he restated his grounds for dismissal in slightly altered terms and denied appellant's motion for reconsideration. The essence of his holding is as follows:

Declaratory relief should be granted when the court in its discretion finds it appropriate. Public Service Commission [of Utah] v. Wycoff, 344 U.S. [237] 239, 241–243 [73 S.Ct. 236, 97 L.Ed. 291] (1952). In the circumstances of this case, a motion to suppress in a criminal prosecution will adequately safeguard the rights of persons charged with crime, and will lead to a determination as to the constitutionality of the procedures employed by the Government to which plaintiff objects.

In neither the July 6 nor the July 31 order did he discuss or rule upon the class action or mootness questions. This appeal followed.

## II

The failure of the District Court to explicitly determine the questions of mootness and class action status has led to some confusion on this appeal, and to disagreement among the members of the panel. We are unanimous in our conclusion that dismissal was proper, but each of us arrives at that conclusion through a slightly different path. The principal issues, the contentions of the parties, and our conclusions on each, are as indicated below.

### A. *Mootness*

■ The Government argues on this appeal that the failure of the District Court to designate the case as a class action pursuant to Rule 23(c)(1), or to provide for notification of such a class upon dismissal under Rule 23(e),[5] necessarily implies that he denied, *sub silentio*, class action status to the case. Therefore, according to the Government's position, since appellant as an individual plaintiff is no longer threatened with any possibility of being required to appear in a lineup the case is moot and the dismissal can be supported on that ground. While not conceding that the court denied class status to his complaint, appellant contends that even if he were viewed solely as an individual plaintiff his case falls within a recognized exception to the mootness doctrine by presenting for resolution issues of public importance that constantly recur[6] in the biweekly police lineups conducted in the District.

We reject the appellant's contention that his case fits within this exception. In each of the cases establishing the exception the parties alleged, in addition to the likelihood of recurrence of the issues raised, that they would themselves be affected by the subsequent recurrence of the events raising those issues. Since appellant was acquitted of all charges that were not dismissed by the Government, he cannot again be placed in the position of one facing a lineup without first giving the Government probable cause to issue new charges against him. We are agreed that as to him, the case

---

5. Fed.R.Civ.P. 23(e) provides:

A class action shall not be dismissed or compromised without approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

Professor Moore notes, however, that "[t]his notice requirement applies only to voluntary dismissals by the plaintiff, and such notice is not a condition precedent to dismissal by the court for lack of jurisdiction or after a hearing on the merits." 3B J. Moore, Federal Practice ¶ 23.80[3] (1969). Thus the Government's contention on this particular point seems clearly wrong.

6. *See, e. g.,* Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); Southern Pac. Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911); Allen v. Hickel, 138 U.S.App.D.C. 31, 424 F.2d 944 (1970); Jeannette Rankin Brigade v. Chief of the Capitol Police, 137 U.S.App. D.C. 155, 421 F.2d 1090 (1969); Women Strike for Peace v. Hickel, 137 U.S.App. D.C. 29, 420 F.2d 597 (1969).

is, simply, moot. We do not, however, accept the Government contention that the District Court did (or that it properly could) deny class status to the case *sub silentio.*

## B. Class Action Status

Appellant has asserted that his case meets the requirements of Rule 23(a),[7] and that the Government's published procedures for conducting lineups, which do not provide for the steps requested in this suit, bring the case within the provisions of Rule 23(b)(2).[8] The Government did not brief this point on appeal, but before the District Court they argued that since the case was moot as to appellant he was no longer a member of the class which he seeks to represent here; therefore the case cannot be maintained as a class action.[9] Appellant responds to this contention that when an individual plaintiff was a member of the class at the time the suit was initiated, subsequent events making the case moot as to that individual do not affect the justiciability of the case for the remainder of the class nor do those events deprive the suit of its class-action status.[10]

The panel is divided on this issue. Judge Tamm would hold that the common bond of membership in the putative class is an essential requisite to class-action status, and that since the case is moot as to appellant it cannot be maintained as a class action. Judge Fahy would follow those cases holding that, having been a member of the class at the outset, the subsequent mooting of the appellant's individual claim does not operate to destroy the class status of the action. I believe that in the peculiar posture of this case and the grounds on which the District Court based its dismissal, it was unnecessary for him, and it is unnecessary for us, to determine this question.

The only operative difference between finding or not finding the case to be maintainable as a class action is the scope of the res judicata effect of the District Court's judgment. If the case is not a class action, only appellant will be formally bound by the District Court's judgment; if it is properly a class determination then all members of the class are bound. The dismissal of the action as an exercise of the District Court's discretion to grant or deny declaratory relief makes this distinction chimerical at best. If class status were denied, any member of the class could bring another individual action for declaratory relief and, if he presented factual circumstances and

---

7. Fed.R.Civ.P. 23(a) provides:

   Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

8. Fed.R.Civ.P. 23(b)(2) provides:

   (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

   \*    \*    \*    \*    \*

   (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive re-

lief or corresponding declaratory relief with respect to the class as a whole.

   .   .   .

9. The Government relied on Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed. 2d 512 (1962), as their principal authority for this proposition.

10. Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n, 375 F.2d 648, 657 (4th Cir. 1967) (en banc); Gatling v. Butler, 52 F.R.D. 389, 394–395 (D.Conn. 1971); Vaughan v. Bower, 313 F.Supp. 37, 40 (D.Ariz.) (3-judge court), aff'd, 400 U.S. 884, 91 S.Ct. 139, 27 L.Ed.2d 129 (1970); Gaddis v. Wyman, 304 F. Supp. 713 (S.D.N.Y.1969) (following this procedural decision the merits of the case were decided by a 3-judge court, 304 F.Supp. 717, and the case was aff'd per curiam sub nom. Wyman v. Bowens, 397 U.S. 49, 90 S.Ct. 813, 25 L.Ed.2d 38 (1970)).

claims more convincing than those presented by appellant here, the District Court would be free to exercise his discretion to grant such relief. However, upon presentation of similarly convincing claims by a class member bound by this case if adjudged a class action, the District Court would still be free to consider that those claims were sufficiently novel and compelling to avoid the res judicata effect of a previous exercise of discretion based on different factual and equitable considerations. Thus, in my opinion, the District Court's failure to determine the class status of the case pursuant to Rule 23(c)(1) was not improper here—his disposition of the complaint makes such a determination largely irrelevant.

### C. *The Propriety of Declaratory Relief*

■ The panel is also divided in our grounds for affirming the District Court's order dismissing appellant's request for declaratory relief. Appellant argued that the questions concerning police lineup procedures that he seeks to have resolved in this case have been the subject in this jurisdiction of considerable confusion and uncertainty regarding the rights of a suspect compelled to appear therein. He cites Professor Borchard's classic treatise for the proposition that:

The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding.

E. Borchard, Declaratory Judgments 299 (2d ed. 1941). Appellant concludes that declaratory relief would thus provide an ideal way to clarify and settle the legal relations in issue and to resolve uncertainties surrounding the suspect's rights at a lineup. He also disputes the District Court's conclusion that an adequate alternative remedy exists, though he points out as well that Fed.R.Civ.P. 57 provides: "The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." [11]

The Government responds to these contentions with two, alternative, arguments. The first of these is premised on their position that the case cannot be maintained as a class action. Since the case is moot with regard to appellant's individual claim, unless it can be maintained as a class action there is no actual, live controversy between parties with adverse legal interests.[12] Alternatively, the Government contends that all of appellant's objections to the lineup procedures could be raised in a pre-trial suppression hearing and that such a hearing provides a completely adequate legal remedy.[13] Where such an alternative le-

---

11. *See, e. g.,* Powell v. McCormack, 395 U.S. 486, 518, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); United Public Workers of America (C.I.O.) v. Mitchell, 330 U.S. 75, 93, 67 S.Ct. 556, 91 L.Ed. 754 (1947); 6A J. Moore, Federal Practice ¶ 57.08 [3] (1971).

12. *See, e. g.,* Golden v. Zwickler, 394 U.S. 103, 108, 110, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941); Davis v. Ichord, 143 U.S.App.D.C. 183, 189–190, 442 F.2d 1207, 1213–1214 (1970).

13. Since the three major Supreme Court identification cases of 1967, United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, the suppression hearing has become virtually a regular procedure in criminal trials in this jurisdiction. Issues raised in such hearings have ultimately led to a substantial portion of the criminal appeals in this court. *See, e. g.,* United States v. Ash, 149 U.S.App.D.C. 1, 461 F.2d 92 (1972) (en banc), cert. granted, 407 U.S. 909, 92 S.Ct. 2436, 32 L.Ed.2d 682 (1972); United States v. Gambrill, 146 U.S.App.D.C. 72, 449 F.2d 1148 (1971); United States v. Greene, 139 U.S.App. D.C. 9, 429 F.2d 193 (1970); *cf.* the disposition of the case in Williams v. United

gal remedy exists, the granting of declaratory relief is within the discretion of the district court,[14] and a declaratory judgment action may properly be dismissed in the exercise of that discretion.[15]

Judge Tamm, having concluded that the case cannot be brought as a class action, would hold that there is no case or controversy presented here and would affirm the dismissal on the ground that the District Court lacked jurisdiction to grant the requested declaratory judgment. Judge Fahy and I find that the dismissal was a proper exercise of the District Court's discretion to refuse to grant declaratory relief.

Appellant's quotation from Professor Borchard's treatise is taken somewhat out of context. After reciting the "two principal criteria" for awarding a declaratory judgment, the next sentence continues: "It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed." E. Borchard, *supra*. Summarizing several pages later, Borchard states:

> The only proper criterion which courts should apply is the utility of the declaration in terminating "the uncertainty or controversy giving rise to the proceeding." It is the adequacy and utility of the declaratory judgment, not of another remedy, which is determinative. Expressed in a different way, the court must be convinced that the declaration will serve a useful purpose.

*Id.* at 308. This concept of declaratory relief is precisely that which has been adopted by the Supreme Court:

But when all of the axioms have been exhausted and all words of definition have been spent, the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power. While the courts should not be reluctant or niggardly in granting this relief in the cases for which it was designed, they must be alert to avoid imposition upon their jurisdiction through obtaining futile or premature interventions, especialy [*sic*] in the field of public law. *A maximum of caution is necessary* in the type of litigation that we have here, *where a ruling is sought which would reach far beyond the particular case.* Such differences of opinion or conflicts of interest must be "ripe for determination" as controversies over legal rights. The disagreement must not be nebulous or contingent but must have taken on fixed and final shape *so that a court can see* what legal issues it is deciding, what effect its decision will have on the adversaries, and *some useful purpose to be achieved* in deciding them.

Public Service Commission of Utah v. Wycoff Co., 344 U.S. 237, 243–244, 73 S.Ct. 236, 97 L.Ed. 291 (1952) (emphasis added). I believe that no useful purpose would be served by granting the declaratory judgment requested here and that the District Court thus properly declined to grant it.

The Supreme Court's recent decision [16] distinguishing a criminal suspect's right to counsel at a lineup con-

States, 136 U.S.App.D.C. 158, 165, 419 F.2d 740, 747 (1969) (en banc); and this court's procedural instructions in Clemons v. United States, 133 U.S.App. D.C. 27, 34, 408 F.2d 1230, 1237 (1968) (en banc), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969).

14. Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952); Brillhart v. Excess Ins. Co., 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).

15. Cunningham Bros. Inc. v. Bail, 407 F.2d 1165 (7th Cir.), cert. denied, 395 U.S. 959, 89 S.Ct. 2100, 23 L.Ed.2d 745 (1969); Larson v. General Motors Corp., 134 F.2d 450 (2d Cir.), cert. denied, 319 U.S. 762, 63 S.Ct. 1318, 87 L.Ed. 1713 (1943); *see* Employers' Liability Assur. Corp. v. Mitchell, 211 F.2d 441 (5th Cir.), cert. denied, 347 U.S. 1014, 74 S.Ct. 869, 98 L.Ed. 1137 (1954).

16. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972).

ducted before or after commencement of a formal "criminal prosecution" would make any general declaration concerning what information must be provided to counsel at every lineup a wholly futile exercise—in that decision the Court has authorized the conduct of many lineups without the presence or aid of counsel. Any Sixth Amendment basis for appellant's requested declaration has therefore been seriously undercut.

A Fifth Amendment due process justification would seem to be a particularly inappropriate basis for declaratory relief. In *Stovall, supra* note 13, the Supreme Court held that "a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it," 388 U.S. at 302, 87 S.Ct. at 1972 and this basic approach to due process in the context of pre-trial identifications was reiterated in Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 347 (1968): "[W]e hold that each case must be considered on its own facts. . . ." After reviewing this line of decisions we found, sitting en banc in *Clemons, supra* note 13, 133 U.S. App.D.C. at 34, 408 F.2d at 1237 (emphasis added):

> [T]he resolution of due process claims, both past and future, remains for us, as it was for the Supreme Court in *Stovall, Simmons*, and *Biggers* [Biggers v. Tennessee, 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267 (1968)] an inescapable duty. That affirmances were the result in all those cases may or may not be significant, but, in any event, we think the Court has formulated a broad standard of review which *focuses upon the distinctive facts of each case in their totality,* and which relies very heavily upon the special capacity and experience of judges, trial and appellate, to discriminate between real and fancied dangers of the miscarriage of justice.

Since the due process inquiry into the totality of the circumstances surrounding identification confrontations is necessarily so individualized by the particular facts presented, I consider that general declaratory relief in advance of such confrontations would be improper.

In addition to the difficulty of formulating a rationally supportable declaration in the context of the near-infinite variety of factual situations capable of existing in lineups, the very nature of our criminal procedure and the wide variance of the factual contexts of lineups and the important nuances thereof would make a judgment virtually useless. Despite the presumed res judicata effect of a class action declaratory judgment on any of the issues appellant seeks to resolve in this suit, in practical terms no defendant in a subsequent criminal prosecution would be bound thereby—in other words, regardless of this judgment no trial court could properly refuse to hear an argument that these procedures as applied in the factual circumstances of any given defendant's case, operated to deprive him of his right to due process of law. In brief, the declaratory judgment requested here would not as a practical matter guarantee that the lineup questions here presented would be finally terminated and settled in any actual criminal prosecution. Under such circumstances the declaration requested would be of very limited utility as it could be attacked and relitigated in practically every criminal case.

Under these circumstances the District Court was fully justified in dismissing this request for declaratory relief. That dismissal was well within the scope of his discretion to grant or deny such relief. The judgment of the District Court is, therefore,

Affirmed.

TAMM, Circuit Judge, concurring:

We are asked in this appeal to determine whether appellant may maintain a class action for declaratory judgment pursuant to Rules 23 and 57 of the Fed. R.Civ.P. and §§ 2201 and 2202 of Title 28 U.S.C. Appellant Spriggs, who was a defendant in a criminal action in the

United States District Court, initiated this declaratory judgment proceeding seeking a determination of a number of legal questions affecting himself and all other persons similarly situated, who had been ordered to attend police line-ups in the District of Columbia. The District Court granted a Government motion to dismiss and appellant appealed to this court. We have considered the issues raised by appellant and accordingly affirm the dismissal by the District Court.

## I. *Facts*

On October 10, 1969, appellant filed suit in the United States District Court for the District of Columbia seeking injunctive relief and declaratory judgment. Appellant sought a temporary restraining order to stay a police lineup which he was ordered to appear in on October 14, 1969. He also sought declaratory relief relative to his rights regarding involvement in that same lineup. Judge McGuire refused to stay the lineup and directed appellant to appear as ordered by the United States Magistrate. At the time that the Magistrate ordered appellant's appearance in connection with an alleged robbery, appellant had not yet been charged with any crime. Following Judge McGuire's ruling on October 14, 1969—the day on which the lineup was scheduled—appellant filed an appeal in this court and requested us to stay the lineup. The court requested the United States Attorney's Office to reschedule appellant's appearance for October 16, 1969, in order for the court to hear oral argument and to make a determination concerning the stay. Oral argument was held and we denied appellant's request for a stay. *See* Spriggs v. Wilson, 136 U.S.App.D.C. 177, 419 F.2d 759 (1969).

Despite our order appellant was never required to appear in a lineup since the complaining witness was not present at the Robbery Squad as requested. However, appellant was charged by a nine-count indictment in Cr. No. 1985–69 with robberies on July 4, July 23, and

July 29. Counts 4, 5, and 6 were dismissed by Government motion on February 10, 1970, after the District Court suppressed all of the Government's identification testimony as to the July 23 robbery. On the same date the Government also dismissed counts 7, 8, and 9 pertaining to the July 29 robbery as identification testimony relating to that charge was also suppressed. Only the first three counts of the indictment—alleging the July 4 robbery—remained and appellant was found not guilty on these three counts by a jury on April 24, 1970.

Subsequently, on December 12, 1969, appellant filed an amended complaint for declaratory judgment with reference to lineup procedures. The Government filed a motion to dismiss alleging that regardless of the situation existing when the original complaint was filed the case was moot since appellant "has not been, and will not be, required to comply with the challenged [lineup] order . . . ." (Memorandum of Points and Authorities in Support of Motion to Dismiss). Appellant filed an opposition to the Government motion and, pursuant to Rule 23(c)(1), Fed.R.Civ.P., denominated the case a class action. The Government claimed that the class action could not be maintained since appellant was not a member of the class which he claimed to represent (*i. e.,* those directed or threatened to be directed to appear in police lineups).

Judge Bryant heard argument on the motion to dismiss on June 24, 1970. The judge showed concern at this hearing over the propriety of appellant's use of a civil suit for declaratory judgment when appellant could challenge the lineup procedure in his criminal case by making a motion to suppress. Appellant filed a supplemental memorandum on June 29, 1970, in which he admitted "that there are appropriate objections to lineup procedures capable of being raised in criminal prosecution." Appellant further argued that this did not create a situation which would foreclose declaratory relief. In addition, appellant asserted that a de-

claratory judgment class action could be maintained even after "the individual demands of the class leader have been fully satisfied."

Judge Bryant granted appellee's motion to dismiss on July 6, 1970, relying mainly on our decision in United States v. Allen, 133 U.S.App.D.C. 84, 408 F.2d 1287 (1969). He held that if the lineup identification resulted in an indictment "the proper place to resolve the substantive issues raised in this complaint would be in a motion to suppress" and that "[t]he use of the extraordinary remedy of declaratory relief and injunction is inappropriate in this case." Appellant then filed a motion for reconsideration claiming that Judge Bryant had "misconceived the nature of declaratory relief and ha[d] misread the pleadings since plaintiff is not presently asking for an injunction." On July 31, 1970, the court issued an order and memorandum in which it stated that "the court misunderstood the nature and extent of plaintiff's prayer for relief." The court then ruled:

Declaratory relief should be granted when the court in its discretion finds it appropriate. Public Service Commission [of Utah] v. Wycoff Co., 344 U.S. 237, 241–243 [73 S.Ct. 236, 97 L. Ed. 291] (1952). In the circumstances of this case, a motion to suppress in a criminal prosecution will adequately safeguard the rights of persons charged with crime, and will lead to a determination as to the constitutionality of the procedures employed by the Government to which plaintiff objects.

## II. Class Action

As appellant has designated his suit a class action, we must determine, as the threshold question, whether the requisite elements of a class action are present. There are four initial requirements which must be met in bringing a class action. Rule 23(a), Fed.R.Civ.P. reads as follows:

(a) Prerequisites to Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Implicit in this initial formula is membership in the class which one claims to represent. Without a common bond between the parties there can be no class. In the Memorandum of Points and Authorities in Support of Appellant's Motion to Certify Case as a Class Action, appellant requested the District Court to determine that Mr. Spriggs was suing "for all persons similarly situated, i. e., all suspects in criminal cases in the District of Columbia who have been required in the past or who will be ordered in the future to appear in lineups conducted by defendants." After examining the factual posture of this case, however, it is clear that Mr. Spriggs is not a member of the class he purports to represent. Appellant simply has not been required to appear in a lineup, and at least with reference to the July 23 robbery the Government has filed an affidavit stating that he will not be required to make a lineup appearance. One who represents a class must be a member of that class. Bailey v. Patterson, 369 U.S. 31, 32–33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962).

## III. Declaratory Judgment

Without questioning the soundness of Judge Bryant's appraisal of the potential of this type of case as being amenable to adjudication by a motion to suppress, we nevertheless are required to determine whether appellant's claims require consideration of his right to a declaratory judgment. Appellant's amended complaint in praying for declaratory relief asked that the court rule that a United States Magistrate may not order a "defendant" to appear in a police lineup "for a crime with which he has never been

charged," that the Government must, in connection with such a lineup furnish specific "modus operandi" material, must disclose to defense counsel all prior descriptions of suspects given police by witnesses, must furnish names and addresses of witnesses who appear at line-ups, and must provide for court reporters' transcripts of lineup proceedings. It is obvious then that a complete factual record of an actual lineup procedure must be before this court after full opportunity in the District Court for testimony, examination and cross-examination, before we may determine the legal principles and precedents which govern the factual situations. Our problem then is to determine whether in this case, in which no criminal charges are pending against appellant, he nevertheless has status to challenge in the abstract the procedures which he alleges are followed in police identification lineups. By casting his complaint in the form of a declaratory judgment action, appellant argues that this court is required to grant the "relief" which he seeks.

Declaratory judgment actions are a relatively new procedure in American jurisprudence, *see* 3 W. Barron and A. Holtzoff, Federal Practice and Procedure § 1261 et seq., but already the essential elements involved are defined and explained.

The Constitution limits the exercise of the judicial power to "cases" and "controversies." . . . [T]he Declaratory Judgment Act of 1934 in its limitation to "cases of actual controversy," manifestly has regard to the constitutional provision and is operative only in respect to controversies which are such in the constitutional sense. The word "actual" in one of emphasis rather than definition. . . . A "controversy" in this sense must be one that is appropriate for judicial determination. Osborn [President, etc., of Bank of] v. United States, 9 Wheat. 738, 819 [16 L.Ed. 204]. A justiciable controversy is thus distinguished from a difference or a dispute of a hypothetical or abstract charac-

ter; from one that is academic or moot. United States v. Alaska S.S. Co., 253 U.S. 113, 116 [40 S.Ct. 448, 449, 64 L.Ed. 808]. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. South Spring [Hill] Gold [Mining] Co. v. Amador [Medean] Gold [Mining] Co., 145 U.S. 300, 301 [12 S.Ct. 921, 36 L.Ed. 721]; Fairchild v. Hughes, 258 U.S. 126, 129 [42 S.Ct. 274, 275, 66 L.Ed. 499]; Massachusetts v. Mellon, 262 U.S. 447, 487–488 [43 S.Ct. 597, 601, 67 L.Ed. 1078]. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. *See* Muskrat v. United States [219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246] . . . ; Texas v. Interstate Commerce Commission, 258 U.S. 158, 162 [42 S.Ct. 261, 262, 66 L.Ed. 531]; New Jersey v. Sargent, 269 U.S. 328, 339, 340 [46 S.Ct. 122, 125, 70 L.Ed. 289]; Liberty Warehouse Co. v. Grannis, 273 U.S. 70 [47 S.Ct. 282, 71 L.Ed. 541]; New York v. Illinois, 274 U.S. 488, 490 [47 S.Ct. 661, 71 L.Ed. 1164]; Willing v. Chicago Auditorium Association, 277 U.S. 274, 289, 290 [48 S.Ct. 507, 509, 72 L.Ed. 880]; Arizona v. California, 283 U.S. 423, 463, 464 [51 S.Ct. 522, 529, 75 L.Ed. 1154]; Alabama v. Arizona, 291 U.S. 286, 291 [54 S.Ct. 399, 401, 78 L.Ed. 793]; United States v. West Virginia, 295 U.S. 463, 474, 475 [55 S.Ct. 789, 79 L.Ed. 1546]; Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 324 [56 S.Ct. 466, 472, 80 L.Ed. 688]. Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages. Nashville, Chattanooga & St. Louis R.

Co. v. Wallace, [288 U.S. 249,] at page 263 [53 S.Ct. 345, 348, 77 L.Ed. 730]; Tutun v. United States, 270 U.S. 568, 576, 577 [46 S.Ct. 425, 426, 70 L.Ed. 738]; Fidelity National Bank [& Trust Co. of Kansas City] v. Swope, 274 U.S. 123, 132 [47 S.Ct. 511, 514, 71 L.Ed. 959]; Old Colony Trust Co. v. Commissioner [of Internal Revenue], [279 U.S. 716,] at page 725 [49 S.Ct. 499, 502, 73 L.Ed. 918].

Aetna Life Insurance Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 239–241, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

We are admonished that "[o]f course the federal courts will not grant declaratory relief in instances where the record does not disclose an 'actual controversy.'" Evers, et al. v. Dwyer, et al., 358 U.S. 202, 203, 79 S.Ct. 178, 179, 3 L.Ed.2d 222 (1958) *citing* Public Service Commission of Utah v. Wycoff Co., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952). Similarly we are instructed that

[T]he difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Maryland Casualty Co. v. Pacific Coal and Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). The phrase "a specific live grievance" is used by the Supreme Court in outlining specific elements necessary for declaratory judgment action in Golden v. Zwickler, 394 U.S. 103, 110, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

Applying these standards to our present record, and noting that this appellant is not charged with any crime, is not ordered or required to appear in any police lineup, and, insofar as I know, has never appeared in such a lineup I conclude that the present action is not a proper one for declaratory relief. This appellant has no "adverse legal interest" to that of our appellees. I am unable to find in the record any factual situation upon which we could afford any relief to appellant—in short there is no action which this court could take which would in any way affect any right or obligation of the appellant. It follows then that there is herein no " 'definite and concrete' controversy which touches the legal relations of [the] parties having adverse legal interests." There is no "real and substantial controversy admitting of specific relief of a conclusive character," nor can I perceive a "specific live grievance" between the parties. Rather, I conclude the record would require us to render "an opinion advising what the law would be upon a hypothetical state of facts" which pronouncements would be beyond and outside of both our jurisdiction and authority.