John B. CICCHETTI,
Plaintiff-Appellee,

v.

David J. LUCEY, Registrar of Motor Vehicles, Defendant-Appellant.

No. 74–1239.

United States Court of Appeals,
First Circuit.

Argued Jan. 8, 1975.

Decided April 16, 1975.

---

Joseph A. Grasso, Jr., Deputy Asst. Atty. Gen. with whom Robert H. Quinn, Atty. Gen. and Walter H. Mayo, III, Asst. Atty. Gen., Boston, Mass., were on brief, for defendant-appellant.

Robert W. Hagopian, Wrentham, Mass., for plaintiff-appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

The maturation of this action began on April 23, 1973, when a Boston policeman cited plaintiff John Cicchetti for a motor vehicle violation. Subsequently a summons issued commanding Cicchetti to appear before the Roxbury Municipal Court on July 6, 1973. He appeared as ordered, but the case was continued for a week because the complaining policeman was absent. On July 13 the case was tried and Cicchetti was found not guilty. On both occasions he was represented by the counsel that represents him here. After these events the clerk of the Roxbury Municipal Court sent the Registry of Motor Vehicles an abstract of the case records which for some unknown reason reported that Cicchetti had defaulted on July 6. Both parties agree that there was no default, and the district court so found. Because of this mistaken notice, however, the defendant, the Massachusetts Registrar of Motor Vehicles, suspended Cicchetti's driver's license pursuant to Mass.Gen.Laws c. 90C, § 4,[1] without a pre-suspension hearing for an indefinite period commencing on September 11, 1973.

---

1. "§ 4. Failure to appear; effect

If any person summoned to appear before a court for an automobile law violation fails without good cause to appear at the time and place specified on said summons, and has failed to comply with the provisions of section four A, the clerk of court to which said summons was returnable shall immediately notify the registrar who shall suspend any motor vehicle license issued to such person, and such person shall not be eligible for reinstatement of his license until he shall have appeared before said court and answered to the charge made against him."

Mass.Gen.Laws c. 90C, § 4A, referred to in the above statute, allows court clerks to accept waiver of trial, plea of guilty, and payment of fines from most persons summoned to appear.

On September 18, 1973, Cicchetti filed a complaint in federal district court seeking a temporary restraining order restoring his license, a declaratory judgment that c. 90C, § 4 is unconstitutional, injunctive relief, and $50 in damages for each day his license was suspended. At the hearing two days later on the request for a temporary restraining order, the Registrar acknowledged that a mistake had been made and indicated he had offered the license back but it had been refused. The district court granted the motion for a three-judge panel, but denied the temporary restraining order because of the absence of irreparable harm, since Cicchetti could either pick up his license by that afternoon or the Registrar would mail it to him. The district court did not explicitly find the date upon which Cicchetti's license was restored, but it appears that it was either that day, September 20, 1973, or very soon thereafter. On October 4 Cicchetti filed a motion for leave to amend his complaint to state a class action, which the district court allowed on November 12, 1973.[2] In the interim the court had advised counsel by letter dated October 12, 1973, that upon reconsideration of the case in light of Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), and Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), no three-judge court would be required. On April 1, 1974, the court heard argument on Cicchetti's motion for summary judgment and defendant's motion to dismiss. At this hearing Cicchetti's counsel indicated that if the court would grant his motion for summary judgment, he would waive the request for injunctive relief to avoid any problems on appeal with 28 U.S.C. § 2281 (1970). On May 21, 1974, the court ordered that Cicchetti could sue as the representative in a class action[3] and entered an opinion awarding summary judgment to the plaintiff class on the ground that c. 90C, § 4 is "uncon-

stitutional on its face" because "it denies persons of an important interest without an opportunity for prior hearing." Cicchetti v. Lucey, 377 F.Supp. 215, 218 (D.Mass.1974).

Defendant argues that Cicchetti lacked standing to sue because his complaint, which can be relied on to determine standing, see Schiaffo v. Helstoski, 492 F.2d 413, 423 (3d Cir. 1974), showed that he was outside the scope of the statute because it alleged that he did not default a summons. A party is not necessarily deprived of standing because his complaint alleges that a statute does not apply to him and alternatively that it is unconstitutional if it does apply, though a federal court might lack jurisdiction if the constitutional claim was merely an attempt to get a federal court to construe a state statute. Cf. Ex-Cell-O Corp. v. City of Chicago, 115 F.2d 627 (7th Cir. 1940). Cicchetti's claim was not an attempt to overturn a statute which could have no direct impact on him. See, e. g., Sissons v. Office of Selective Service, 454 F.2d 279 (9th Cir. 1972) (female had no standing to attack draft board procedures). Whether correctly or not the statute had in fact been invoked to suspend his license. Even though Cicchetti might have lacked standing to sue for an injunction and still have had standing to sue for damages, cf. Landau v. Chase Manhattan Bank, N.A., 367 F.Supp. 992 (S.D.N.Y. 1973), we question the necessity of making a federal case out of what must have been recognized as a mistake on the part of someone in the state bureaucracy. In any event, because the facts of this case raise the issue of mootness more sharply than standing and we decide on mootness grounds that the claim should have been dismissed, we decline to decide whether Cicchetti's complaint should have been dismissed for lack of standing. DaCosta

**2.** In his amended complaint Cicchetti did not renew his claim for damages. Only injunctive and declaratory relief was sought.

**3.** The class was defined to include "[a]ll those persons whose Massachusetts License to Oper-

ate Motor Vehicles has been suspended by the defendant or his predecessors or successors in office pursuant to Massachusetts General Laws, Chapter 90C, Section 4, prior to an opportunity for hearing on such suspension."

v. Laird, 471 F.2d 1146, 1152 (2d Cir. 1973).

■ The issue to which we now turn is whether an individual plaintiff challenging a state statute can maintain his action by amending his complaint to state a class action once his alleged injury has ended. We recognize that the claim for nominal damages might have kept Cicchetti's individual action alive despite the return of his license, e. g., Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); Liner v. Jafco, Inc., 375 U.S. 301, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964), but once the amended complaint was allowed and the damage claim was thereby waived on November 12, 1973, nothing remained to keep the individual action viable. There was then no continuing live dispute between him and defendant Lucey. For the reasons that follow we hold that Cicchetti could not resuscitate his action by amending his complaint to state a class

action after his individual case was mooted.

■ We begin our analysis with Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). In a dictum in that opinion the Court reiterated "the firmly established requirement that the judicial power of Art. III courts extends only to 'cases and controversies' specified in that Article," and stated that "[t]here must not only be a named plaintiff who has such a case or controversy at the time the complaint is filed,"[4] but, with a possible exception to which we shall later advert, there must continue to be a live controversy "at the time the class action is certified by the District Court pursuant to Rule 23." Id. at 402, 95 S.Ct. at 559 (footnote 11 omitted). In the instant case the class action was certified on May 21, 1974, some eight months after Cicchetti recovered his license and six months after the amended complaint was allowed.[5] Unless some exception to

---

4. At this point we are assuming, without deciding, that this requirement—often denominated the standing doctrine—has been satisfied.

5. There is a theory under which a class action existed prior to May 21, 1974. In order to effectuate the purposes of Fed.R.Civ.P. 23(e), which bars dismissal or compromise of a class action without court approval, some courts have stated that a properly certified class must be deemed to exist during the period between filing of the complaint and determination of the class question pursuant to Rule 23(c)(1). E. g., Katz v. Carte Blanche Corp., 496 F.2d 747, 758 (3d Cir.), cert. denied, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); Frost v. Weinberger, 375 F.Supp. 1312, 1318–19 (E.D. N.Y.1974); Yaffe v. Detroit Steel Corp., 50 F.R.D. 481, 483 (N.D.Ill.1970); Philadelphia Electric Co. v. Anaconda American Brass Co., 42 F.R.D. 324, 326 (E.D.Pa.1967). Their objective appears to be to avoid putting a premium on quick action by a class action defendant to "buy off" the named plaintiffs prior to class certification. Miller, Problems of Giving Notice in Class Actions, 58 F.R.D. 313, 332 (1973). Other courts have similarly deemed a class to exist for intervention purposes. E. g., Washington v. Wyman, 54 F.R.D. 266, 270–71 (S.D.N.Y.1971) (allowing intervention by two members of putative class after mooting of case as to original named plaintiff but before class determination); McCausland v. Shareholders Mgt. Co., 52 F.R.D. 521 (S.D.N.Y.

1971). Contra, Callier v. Hill, 326 F.Supp. 669 (W.D.Mo.1970) (nonmoot action condition precedent to intervention). This presumption of class action status prior to certification has also been used to avoid mootness. Frost v. Weinberger, supra; Gatling v. Butler, 52 F.R.D. 389, 393–95 (D.Conn.1971). The court below may have tacitly adopted this reasoning, since it held that "[m]ootness is not an issue as this action is brought on behalf of a class." 377 F.Supp. at 217.

We need not decide the extent, if any, to which these cases conflict with the dictum in Sosna that there must be a live controversy "at the time the class action is certified by the District Court," since even if they are correct they are of no aid here. A fair reading of the record establishes that Cicchetti had no dispute left, except perhaps his individual damage claim, as of the date he filed a class action complaint. His license was returned on or shortly after September 20, 1973, and the amended complaint was not filed until October 4. Since an amended complaint normally is treated as completely replacing the former pleading, Bullen v. De Bretteville, 239 F.2d 824, 833 (9th Cir. 1956), cert. denied sub nom. Treasure Co. v. Bullen, 353 U.S. 947, 77 S.Ct. 825, 1 L.Ed.2d 856 (1957), even the residual claim for damages disappeared no later than November 12, when the district court granted the motion to amend. Assuming, arguendo, that the crucial date for these Rule 23(e) cases is the date of filing an amendment, rather than

the mootness doctrine applied to keep the controversy alive in May 1974, it appears that the case was moot long before the district court certified a class.[6] Thus we now evaluate the possible theories by which this case is not moot.

One line of cases involving a mootness issue embraces instances of future recurrence of past injury. *E. g.*, SEC v. Medical Committee for Human Rights, 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972); United States v. Concentrated Phosphate Export Ass'n, Inc., 393 U.S. 199, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968); United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953) (defendant voluntarily resigned from allegedly illegal interlocking directorates). These cases show that a dispute will be held moot if "the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.'" United States v. W. T. Grant Co., *supra* at 633, 73 S.Ct. at 897. Even if the burden on the defendant of showing that there was no likelihood of recurrence is "heavy," as it was in *W. T. Grant Co., supra* at 633, 73 S.Ct. 894, we hold that that burden has been satisfied. A major factor in finding mootness in voluntary cessation cases is whether there are "aspects of the factual situation beyond the defendant's control that make recurrence of the challenged conduct unlikely." Note, The Mootness Doctrine in the Supreme Court, 88 Harv.

L.Rev. 373, 384 (1974). Here, Cicchetti has to be summoned to appear in court for violating a traffic regulation before he can default a summons, even by clerical mistake. *See* Spriggs v. Wilson, 151 U.S.App.D.C. 328, 467 F.2d 382 (1972).[7] Therefore Lucey cannot unilaterally engage in the allegedly unconstitutional acts authorized by c. 90C, § 4. In this situation we conclude that "the allegedly wrongful behavior could not reasonably be expected to recur." SEC v. Medical Committee for Human Rights, *supra* at 406, 92 S.Ct. at 579.

A second line of cases encompasses situations where the challenged conduct is "capable of repetition, yet evading review." Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911); *e. g.*, Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974); Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). Assuming that the appropriate inquiry in applying this standard is to the named plaintiff, rather than the purported class, we have already indicated that it is unlikely that the challenged conduct will be repeated. If the appropriate inquiry is to the class, we have no doubt that license suspensions are "capable of repetition." Indeed, the defendant fully intends to continue suspending licenses in

the date of allowance, plaintiff's temporarily extant damage claim still cannot preserve a viable class action against the statute. To allow that would be to retain plaintiff's original complaint in part and simultaneously supersede it in most part. Moreover, in this case decision on Cicchetti's damage claim would not have required a declaration regarding the statute's constitutionality, since, as the district court indicated, that claim would likely fail for the independent reason that Lucey acted in good faith.

Lastly, on the special facts of this case we doubt that dismissal of Cicchetti's action once it was discovered that application of the statute to him was a mistake would have disserved the purpose of Rule 23(e). *Cf.* May v. Midwest Refining Co., 121 F.2d 431, 440 (1st Cir.), cert. denied, 314 U.S. 668, 62 S.Ct. 129, 86 L.Ed. 534 (1941). Defendant was not buying off plaintiff's suit, thereby contravening

Rule 23(e); he was merely correcting what both parties conceded to be a mistake. Rule 23(e) does not entitle a plaintiff to force a defendant to defend a mistake.

**6.** Cicchetti argues that the case is not moot because there were two different summonses, defaults were entered on both, and only one "default" was corrected by return of his license. But this argument is unavailing. Since the license was suspended only once, it could be returned only once.

**7.** In *Spriggs* the defendant had been acquitted of all charges not dismissed and could not be faced with a lineup again without giving probable cause to issue new charges. In these circumstances the court held that his suit seeking a declaratory judgment concerning various aspects of the lineup procedure was moot. The court also denied the declaration as a matter of discretion.

cases within the scope of c. 90C, § 4. But in either inquiry, we cannot conclude that the constitutionality of the statute would evade review. If a Massachusetts driver failed to respond to a summons and had his license suspended without a hearing, that person could begin a class action and secure adjudication of the constitutionality of c. 90C, § 4. Gerstein v. Pugh, 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); Sosna v. Iowa, *supra*.[8] But that does not mean an individual plaintiff could convert his action to a class action *after* his individual action was mooted. Such a procedure would greatly enlarge the jurisdiction of the federal courts, and we decline to sanction it. *Cf.* Cloak v. Cody, 449 F.2d 781 (4th Cir.), vacating as moot 326 F.Supp. 391 (M.D.N.C.1971).

■ In footnote 11 in *Sosna* the Supreme Court recognized a possible exception to the general rule that there must be a live controversy between the named plaintiff and the defendant at the time the class is certified. The exception provides that if the case is such that it becomes moot as to the named plaintiff "before the District Court can reasonably be expected to rule on a certification motion," then the certification may relate back to the filing of the complaint, depending "upon the circum-

stances of the particular case and especially the reality of the claim that otherwise the issue would evade review." However, the facts which would trigger this narrow exception are absent here. The exception, where it applies, operates to keep a class action viable prior to certification, Gerstein v. Pugh, *supra* at —— n. 11, 95 S.Ct. 854, not to keep an individual action viable prior to the filing of a class complaint.

The only other theory appellee suggests by which we could avoid finding mootness is that the class action status related back even further to the original complaint, *see* Fed.R.Civ.P. 15(c), although it contained no mention of a class, and therefore the action should be treated as though it were a class action from September 18, 1973.[9] Under this theory the plaintiff would increase retroactively from a single person to a class.[10] Rule 15(c) does not expressly govern the relation back of amendments changing plaintiffs, Advisory Comm. Note, 39 F.R.D. 82, 83–84 (1966), though the relevant considerations are normally similar to those for changing defendants. *Id.* However, this case may not be normal.[11] Generally a major factor in Rule 15(c) analysis is the policy reflected in the statute of limitations, but different interests may be implicated here where the purpose would be to avoid mootness rather than the statute of limitations.[12]

**8.** This reasoning may appear circular in that both *Gerstein* and *Sosna* rejected mootness claims in part because otherwise the challenged conduct would evade review. However, in both those cases there was a class action complaint prior to the occurrence of the alleged mootness, a characteristic absent here.

**9.** This relation back theory differs from the presumption theory in note 5 *supra*. The latter would mean class status from October 4, 1973; the former, from September 18, 1973—a significant difference where mootness intervened between those dates.

**10.** *Cf.* Hackner v. Guaranty Trust Co. of New York, 117 F.2d 95 (2d Cir.), cert. denied, 313 U.S. 559, 61 S.Ct. 835, 85 L.Ed. 1520 (1941) (allowing new plaintiff to be added by amendment although original plaintiffs lacked jurisdictional amount); Seely v. Cleveland Wrecking Co. of Cincinnati, 15 F.R.D. 469 (E.D.Pa. 1954) (permitting addition of plaintiffs by

amendment where same transaction involved, new plaintiffs could have joined originally in suit, and defendant not prejudiced). *But cf.* Government of Pakistan v. S.S. Ionian Trader, 173 F.Supp. 29, 31–32 (S.D.N.Y.1959), aff'd, 279 F.2d 471 (2d Cir. 1960) (where original complaint was a nullity, amendment could not relate back under Rule 15(c)).

**11.** "[S]ituations which justify relation back of an amendment under Rule 15, joining a complete stranger to the original action as plaintiff, will probably be rare . . . ." 3 J. Moore, Federal Practice ¶ 15.15[4.–2], at 1052 (2d ed. 1974) (footnote omitted).

**12.** *See* United States v. Stromberg, 227 F.2d 903, 906 (5th Cir. 1955): "It is questionable whether the doctrine of 'relation back' should be applied with the same liberality when it will deprive a party against whom the amendment is made of a substantial right, or impose upon such party a serious liability, as when its pur-

For example, this theory may expand federal jurisdiction contrary to Fed.R. Civ.P. 82, since absent the operation of Rule 15(c) we have held the action would be moot. Without deciding that question, we decline to adopt the relation back argument. The policy reflected in footnote 11 in *Sosna* is to ensure review in cases where *Sosna's* general rule coupled with the friction in the judicial machinery would otherwise preclude it. This policy is not served by extending review to a case where plaintiff·chose to seek individual relief and had his case mooted before obtaining the desired judicial declaration. Footnote 11 in *Sosna* sanctions relation back to protect against unavoidable judicial delay, not a deliberate choice by a party.[13]

The judgment of the district court is vacated and the appeal is dismissed.

pose is simply to lift the bar of the statute of limitations."

**13.** In light of our resolution of this appeal we need not decide whether the fact that c. 90C, § 4 has not been construed by any published state court opinion made this an appropriate case for abstention. Nor need we decide whether the statute can be unconstitutional "on its face" when it expressly provides for license suspension only where a default has been "without good cause."