**Paul MOORE, Plaintiff,**

v.

**David MATTHEWS et al.,
Defendants.**

**Civ. A. No. 75–2555–T.**

United States District Court,
D. Massachusetts.

Dec. 16, 1975.

Kenneth N. Margolin, North Suffolk Legal Asst., Chelsea, Mass., Janice Campbell, Boston, Mass., for plaintiff.

Marshall D. Stein, Asst. U. S. Atty., for defendant, Caspar Weinberger.

## MEMORANDUM

TAURO, District Judge.

Plaintiff, a recipient of benefits under the Supplemental Security Income (SSI) program, brings this action on behalf of all similarly situated Massachusetts SSI recipients, seeking to compel the defendants to promptly replace SSI checks which have either been lost or stolen or which the government has mistakenly failed to issue. The plaintiff claims that continuing delays in receiving replacement checks not only leave class members destitute and pose a threat to their health but also deprive them of their statutory right to SSI benefits and their constitutional right to due process and equal protection.

Currently pending is the plaintiff's motion for class action certification. The defendants oppose certification, because (1) the action of the named plaintiff has become moot and, (2) the proposed class fails to meet the requirements of Rule 23.

### I.

The plaintiff has been receiving monthly SSI benefits of $287 since the inception of the program in January 1974. That grant, plus a $103 monthly disability payment under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* make up his sole source of support.[1]

In March 1975, the plaintiff arranged with the Social Security Administration to have both checks sent directly to his bank rather than to his home. By May 1975, however, that request had not been complied with. Then on June 1, 1975, the plaintiff received his disability check at home, but neither he nor his bank received his SSI check for the month. On June 2, 1975, after checking again at home and at the bank, the plaintiff reported the problem to the Charlestown District Office of the Social Security Administration. He was told that the Office would attempt to locate the missing SSI check. On June 10, 1975, the Office informed the plaintiff that his June SSI check had been lost. The plaintiff filled out a lost check form and was told that a replacement would be issued at the earliest by June 24, 1975. On June 25, 1975, the plaintiff had still not received his check, and instituted this lawsuit that day. His June SSI check was replaced on June 27, 1975.

### II.

All parties concede that had this action been maintained on behalf of the named plaintiff alone, it would now be moot. The plaintiff has received from the agency the relief he originally sought in the courts. Nevertheless, the plaintiff argues that there remains a live controversy between the members of the proposed class and the defendants, and that certification at this time is not barred by mootness.

The plaintiff's theory is based upon the Supreme Court's recent decisions in *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) and *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). In *Sosna,* the plaintiff brought a class action in federal district court challenging, on constitutional grounds, the one year Iowa durational residency requirement for divorces. At the time the district court certified the class, the named plaintiff had not yet met the residency requirement. By the time the matter reached the Supreme Court, however, she had met the residency requirement. Nevertheless, the Court held that the case had not become moot because there remained a live controversy between the defendants and the class of persons plaintiff sought to represent. Moreover, the Court noted that, as a practical matter, a finding of mootness in this situation would result in "a significant class of federal claims [remaining] unredressed for want of a

---

1. Those eligible for SSI are apparently ineligible for Emergency Assistance. 42 U.S.C. § 606(e).

spokesman who could retain a personal adversary position throughout the course of the litigation." *Sosna v. Iowa, supra,* 419 U.S. at 401, n. 9, 95 S.Ct. at 558.

In dicta, the Court restated what seemed to have been the settled rule that

[t]here must . . . be a named plaintiff who has . . . a case or controversy at the time the . . . class action is certified by the District Court pursuant to Rule 23 . . . .

*Id.* at 402, 95 S.Ct. at 559.

Then in a footnote, the Court made the following observation.

There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the District Court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to "relate back" to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review.

*Id.* at 402, n. 11, 95 S.Ct. at 559.

About a month later, the Court had occasion to apply footnote 11. In *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the plaintiffs brought a class action challenging a Florida procedure which allowed criminal defendants to be held for trial pursuant to a prosecutor's information, without any judicial determination of probable cause. By the time the case reached the Supreme Court, the named plaintiffs had been convicted and the record did not indicate whether they were still confined at the time the District Court certified the class. Nevertheless, the Court held that even if the named plaintiffs' confinement had ended prior to certification, the case would not have become moot.

At the time the complaint was filed, the named respondents were members of a class of persons detained without a judicial probable cause determination, but the record does not indicate whether any of them were still in custody awaiting trial when the District Court certified the class. Such a showing ordinarily would be required to avoid mootness under *Sosna.* But this case is a suitable exception to that requirement. [citations omitted.]

The length of pretrial custody cannot be ascertained at the outset, and it may be ended at any time by release on recognizance, dismissal of the charges, or a guilty plea, as well as by acquittal or conviction after trial. It is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class. Moreover, in this case the constant existence of a class of persons suffering the deprivation is certain.

*Gerstein v. Pugh, supra,* 420 U.S. at 110, n. 11, 95 S.Ct. at 861.

As the Court noted, "[t]he claim, in short, is one that is distinctly 'capable of repetition, yet evading review.'" *Id.* See also *Frost v. Weinberger,* 515 F.2d 57, 62–65 (2d Cir. 1975). *But cf. Cicchetti v. Lucey,* 514 F.2d 362 (1st Cir. 1975).

This case, like *Gerstein,* seems to fall within that narrow class of cases which do not become moot merely because the named plaintiff's dispute has been resolved before the class action has been certified. The plaintiff claims that delays in the receipt of SSI benefits are so damaging to the health and well-being of the members of the class he seeks to represent that they constitute both statutory and constitutional violations. Figures submitted by the government indicate that those delays are not uncommon and that they may last for weeks.[2] For

---

**2.** This representation was made by the government at the October 9, 1975 hearing on the motion for class action certification and was based upon the results of a survey tak-

an individual whose SSI benefits constitute his basic source of income, such a delay may well deprive him of resources needed to purchase basic necessities, even though the program for which he qualifies was designed, in part, to provide him such assistance. Although the government's figures indicate that replacement checks are generally issued, they may come too late to avoid the alleged consequences of the error.

Moreover, while the period of time needed to replace a check may appear instantaneous from an administrative standpoint, it hardly provides ample opportunity for a court to decide the potentially complex issues raised by Rule 23. In this case, for example, the plaintiff filed suit in late June only after he had attempted for several weeks to obtain redress through administrative channels. Yet, while the Social Security Administration's work in the case was then nearing completion, the court's task had only begun. The press of other business made it impossible to schedule plaintiff's motion for class action certification until October. Counsel then requested, and received, several extensions of time to engage in settlement negotiations as well as to file memoranda on the issues raised at the hearing. The case could not be taken under advisement until December, almost six months after the plaintiff had received his check.

Whatever the legal merit of plaintiff's claim, or whatever the practical obstacles to fashioning a meaningful remedy, it seems manifest that in this type of case, the named plaintiff's dispute will generally have been resolved administratively long before a court has had the opportunity to carefully consider the class action question. As such, the case clearly falls into the category contemplated by footnote 11 of *Sosna*. This court holds, therefore, that under the

circumstances presented here, mootness does not bar a class action from being maintained.

### III.

The remaining issues center around whether the proposed class meets the traditional requirements of Rule 23.

The government admits the existence of a class of Massachusetts SSI recipients who, for a variety of reasons, will fail to receive their monthly assistance check on the scheduled day. There is little doubt that joinder of these class members is impractical,[3] nor is there any claim that present counsel cannot adequately represent the interests of the remaining class members. *Sosna v Iowa, supra*, 419 U.S. at 403, 95 S.Ct. 553.

The defendants do claim that the proposed class is too broadly defined and that the plaintiff's claim is not typical of all those who, for some reason, may not have received SSI benefit checks on time. For example, the defendants argue that the processing of the claim of a person whose check was issued but was lost in the mail might be entirely different from the procedure used to issue a check which a computer neglected to print at the outset. Yet the plaintiff's theory does not turn on the particular circumstances of individual recipients. Rather, it is directed across the board, challenging the entire procedure for the issuance of replacement checks, and seeking to compel the adoption of an integrated program of replacement for the benefit of all SSI recipients in a similar situation. Indeed, it would appear that the only way to provide meaningful relief, if required, with the least disruption to the administrative process, would be to provide a remedy which takes into account the interests of all recipients, as well as all of the agencies in-

en under government auspices in July 1975 using a sample of several hundred Massachusetts S.S.I. recipients.

3. The plaintiff estimates that the proposed class consists of approximately 112,000 persons.

volved. Subsequent events may well show such a class to have been too unwieldy, or otherwise require that it be modified. On the record in this case so far, however, it does not appear that the claims of the members of the class are so dissimilar and that the plaintiff's claim is so untypical that he is unable to represent the interests of the class members.

Accordingly, the court holds that the proposed class meets the requirements of Fed.R.Civ.P. 23(a). Moreover, because it appears that the defendants have acted or refused to act on grounds generally applicable to the class, this action is certified as a class action pursuant to Fed.R.Civ.P. 23(b)(2).[4]

---

4. *Weinberger v. Salfi*, 422 U.S. 749, 95 S. Ct. 2457, 45 L.Ed.2d 522 (1975) is inapposite. The plaintiff does not seek a judicial determination of eligibility for Social Security Benefits under Title II.